[No. 32931.   *En Banc.*   July 21, 1955.]

G. W. BLANCHER *et al., Respondents,* v. THE BANK OF
CALIFORNIA *et al., Appellants.*[1]

[1]Reported in 286 P. (2d) 92.

*Neal, Bonneville & Hughes*, for appellant Bank of California.

*Goodwin & Hicks*, for appellant M. R. McClelland Sons, Inc.

*Eisenhower, Hunter, Ramsdell & Duncan*, for appellant Patent Scaffolding Company.

*Henry Arnold Peterson*, for respondents.

OTT, J.—December 9, 1952, the defendant Bank of California entered into a written contract with defendant contractor, McClelland Sons, Inc., to have the main banking room, including the mezzanines, cleaned and redecorated. The contract included the following items: cleaning of the ceiling (forty-two feet in height) and side walls, a touch-up of all white spots on the ceiling, and patching and staining of the plaster. Defendant McClelland was to furnish all

material, scaffolding, equipment, and labor necessary to complete the job. The contract expressly authorized defendant McClelland "to work during any hours, including banking hours."

With the knowledge and consent of the bank, defendant McClelland subcontracted for the necessary scaffolding and the erection thereof with defendant Patent Scaffolding Company, Inc.

We shall hereafter refer to the above-mentioned parties as the bank, McClelland, and Patent.

At approximately twelve o'clock noon on December 29, 1952, plaintiff wife, Birdie M. Blancher, entered the bank with her husband. As the Blanchers proceeded toward the rear of the bank, Mrs. Blancher stopped to talk to a friend, Mrs. Larson, while Mr. Blancher went on to transact his business with the bank. The two ladies talked for about fifteen minutes. As Mrs. Blancher turned to leave, she fell over a stepladder which was lying flat on the floor almost immediately behind her, and was seriously injured. Neither of the two ladies had previously seen the ladder, nor had they heard anything being placed behind them during their conversation.

Mr. Babbit, an officer of the bank, was called as a witness and stated that he had seen the ladder leaning against a wall of the lobby, near the place of the accident, several hours before, and that a floorman was employed to keep the floor of the lobby clear of all obstructions. If such a person was so employed by the bank, he was not called to testify. Mr. Babbit saw the plaintiff wife immediately after her fall, and was present when she was assisted to her feet. Mrs. Larson testified that, at that time, he said, "it was very careless of this workman to have the ladder in that position." Mr. Babbit did not deny having made this statement. The stepladder remained flat on the floor of the bank lobby for approximately one hour after the accident occurred.

Mr. Benjamin, foreman on this job for defendant McClelland, testified that it was the duty of defendants McClelland and Patent to keep the floor clear of obstructions, and that the performance of this duty was under his personal super-

vision. He stated that he left the stepladder leaning against a wall in the bank lobby; that the last time he saw it was just before he and his crew left for lunch, and that he had designated no other employee to perform the duty of keeping the lobby clear of obstructions during his absence. Mr. Benjamin further testified that, upon returning and seeing the stepladder on the floor, he asked Bill Ellis, a Patent employee, " . . . who put that ladder out, 'Don't you know somebody might break their neck?' " and that Mr. Ellis replied, " 'I heaved it out there. It was in my way.' "

The only witness called on behalf of defendant Patent was Bill Ellis, who stated that he had never seen the ladder, and denied that he had made the above statement to Mr. Benjamin.

The jury returned a verdict against all three of the defendants, holding them jointly liable in damages for the injuries sustained by plaintiff wife. The court denied motions for judgment notwithstanding the verdict or, in the alternative, for a new trial, and entered judgment based upon the verdict. All of the defendants have appealed.

Each of the appellants assigns as error the failure of the court to grant motions for dismissal and for judgment notwithstanding the verdict. In considering these motions, the court must interpret the evidence most strongly against the moving party and in the light most favorable to the opposing party. *Fedland v. Teshera,* 40 Wn. (2d) 256, 260, 242 P. (2d) 751 (1952), and cases cited; *Kemalyan v. Henderson,* 45 Wn. (2d) 693, 696, 277 P. (2d) 372 (1954), and cases cited; *Fink v. Dixon,* 46 Wn. (2d) 794, 796, 285 P. (2d) 557 (1955), and cases cited.

Applying this rule to the facts in this case, the court did not err in denying these motions. There was sufficient evidence for the jury to conclude that each of the appellants was guilty of negligence as follows:

First, the bank, as a business invitor, was negligent in failing to use due care in maintaining its floor in a reasonably safe condition, considering the nature of its business and the circumstances surrounding the particular event. *Hanson v. Lincoln First Federal Sav. & Loan Ass'n,*

45 Wn. (2d) 577, 277 P. (2d) 344 (1954), and case cited. The bank was inviting patrons into its place of business during banking hours, where, knowingly and intentionally, it was carrying on another and hazardous activity, that of having the bank redecorated. The bank owed a duty to respondent wife, a business invitee, to exercise reasonable care to protect her against injuries which could be inflicted due to this hazard. This the bank failed to do. The testi· mony disclosed that the bank either (1) had a man whose duty it was to supervise the lobby and who failed to do so, or (2) that there was no such employee appointed by it to perform such duty, or (3) that it had appointed a third person to carry out the duty of supervision, who had failed to perform. There was a failure on the part of the bank to exercise due care, if any one of these negligent acts was established.

Secondly, appellant McClelland assumed the duty to keep the lobby clear of obstructions and to exercise reasonable care to protect the business invitees of the bank from injury at all times during its performance of the contract. It likewise failed to perform its duty. Appellant McClelland admitted, by its answer to paragraph II of respondents' amended complaint, that the bank lobby "was under the management and control of defendant bank in conjunction with the other defendants." This admission was supported by the testimony of Mr. Benjamin, McClelland's foreman, that he was the man designated to perform this duty. He testified as follows:

"Q. And who directed you to keep the lobby or the main travelled portion of that lobby clear of obstructions? A. Mr. McClelland for one, and Mr. Babbit [an officer of appellant bank], also."

With this admitted obligation to the parties and bank patrons, Mr. Benjamin left the lobby of the bank wholly unattended during the noon hour, one of its busiest times. From this evidence, the jury was justified in finding McClelland negligent.

Third, as to appellant Patent, the evidence is conflicting. The witness Benjamin testified that Ellis, Patent's

only witness, admitted that he had placed the stepladder on the floor. The statement was denied by Mr. Ellis. From its verdict, the jury undoubtedly concluded that the stepladder had been placed there as contended by Mr. Benjamin, and that this act constituted negligence. This conclusion, reached after considering conflicting testimony, was within the sole province of the jury. *Heitfeld v. Benevolent & Protective Order of Keglers,* 36 Wn. (2d) 685, 699, 220 P. (2d) 655, 18 A. L. R. (2d) 983 (1950).

We conclude that there was sufficient evidence in this case for the jury to determine that each of the appellants was negligent.

In determining joint liability, the jury was instructed as follows:

Instruction No. 12: "If you find that any particular defendant is guilty of negligence in any of the particulars or specifications charged in the complaint, such defendant cannot justify its negligence or excuse itself from liability therefor by the fact, if such be the fact, that another of the defendants was guilty of negligence in any of such particulars.

"You are not permitted under the law to weigh the negligence, if any, of one defendant against the other to determine which was the most guilty, for if two or more of the defendants were negligent and the negligence of each caused or contributed to cause the injury of plaintiff wife, then your verdict must be in favor of plaintiffs and against all of the defendants thus found to be negligent, unless you find plaintiff herself was guilty of contributory negligence as herein defined."

Instruction No. 13: "You are instructed that there may be more than one proximate cause of an injury. That is to say, there may be lack of ordinary care on the part of more than one person and you are instructed that it is the law of this state that where the concurring and combined negligence of two or more persons results in an injury to a third person, the third person may recover from either or all of them, but only in one amount.

"So in this case, if you find from the evidence that two or more of the defendants are guilty of negligence in any of the particulars charged in the complaint and that the negligence of each was one of the proximate causes of the injury,

then your verdict must be in favor of the plaintiffs and against each and all of the defendants thus found to be negligent, unless you find that plaintiff wife was guilty of contributory negligence as herein defined."

■ None of the instructions given by the court was excepted to by any of the appellants, hence the law announced therein became the law of the case. *Irvin v. Spear,* 41 Wn. (2d) 224, 227, 248 P. (2d) 404 (1952), and cases cited. The jury, in the exercise of its discretion in applying the facts (as it found them to be) to the law (as announced by instructions of the court), properly concluded that each of the appellants was liable in damages to the respondents.

■ Both the bank and McClelland strenuously argue, on appeal, that there was a lack of notice of the ladder being in the lane of customer travel for a sufficient length of time to bring to their attention the hazard created thereby. Both appellants had notice of the over-all continuous hazard when, by the terms of the contract, the redecorating was authorized to be done during banking hours. Whether due care was exercised by the appellants to protect invitees from this hazard, was a question of fact for the jury. *Cantrill v. American Mail Line,* 42 Wn. (2d) 590, 257 P. (2d) 179 (1953). The jury concluded that both appellants failed to take reasonable precautions to guard against the continuous hazardous condition they themselves had created.

Appellants bank and McClelland further assign error to the trial court's denial of their motions for a new trial. The sufficiency of the evidence has already been discussed and disposed of adversely to appellants. The remaining reason urged for a new trial is that certain requested instructions were not given.

Appellant bank assigns as error the court's refusal to give its proposed instructions on its nonliability for the negligent acts of an intervening agency or intervening cause, and on its nonliability for the acts of an independent contractor. Appellant McClelland assigns as error the court's failure to give its proposed instructions which dealt with the definition of *respondeat superior,* the independent contractor and

subcontractor theories, intervening cause, and lack of joint control of the bank lobby.

The rules of law announced in these requested instructions were not applicable to the issues in this case. The duty of the bank and McClelland to exercise due care to an invitee was a nondelegable duty.

The rule with reference to nondelegable duty and vicarious liability is stated in various law reviews and by text writers as follows:

2 Restatement, Torts, 1128, § 416: "One who employs an independent contractor to do work, which the employer should recognize as necessarily requiring the creation during its progress of a condition involving a peculiar risk of bodily harm to others unless special precautions are taken, is subject to liability for bodily harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions."

Annotation, 23 A. L. R. 1010: "In other words, 'when the owner of premises which are under his control employs an independent contractor to do work upon them which from its nature is likely to render the premises dangerous to persons who may come upon them by the invitation of the owner, the owner is not relieved, by reason of the contract, from the obligation of seeing that due care is used to protect such persons.' "

Vicarious Liability, 28 Tulane L. Rev. 204: "Some common law duties are also non-delegable. Thus . . . the land occupier's duty of care to keep the premises reasonably safe for invitees . . . may not be avoided by the employment of independent contractors. In all these cases the employer is as liable for the conduct of the contractor as though it were his own."

In *Dagley v. National Cloak & Suit Co.*, 224 Mo. App. 61, 22 S. W. (2d) 892 (1929), the Missouri court of appeals stated the rule as follows:

"We fully agree that the advertising company was an independent contractor. But a storekeeper may not relieve himself of the duty to use reasonable care to keep his premises in a reasonably safe condition for the use of his invited customers and his prospective customers by contracting with others and relying upon them to take the necessary precautionary measures. [Citing authority and cases.]"

In *Great American Indemnity Co. v. Deatherage*, 175 Okla. 28, 52 P. (2d) 827 (1936), the supreme court of Oklahoma adhered to the above-quoted rules, stating:

"Under the facts in the instant case the insured was primarily liable for the injuries sustained by the plaintiff. The plaintiff, at the time of the injury, was an invitee upon the premises and was there to transact business with the defendant and not with the independent contractor. The liability of the defendant rested, not upon the negligence of the independent contractor, but upon its own negligence in failing to protect the plaintiff from the consequences of the negligence of the independent contractor."

The particular issue raised by this appeal has never been decided by this court. In the well-prepared briefs submitted by counsel for appellants and respondents upon this point, no Washington case has been cited, and we have found none. In *Myers v. Little Church by the Side of the Road*, 37 Wn. (2d) 897, 227 P. (2d) 165 (1951), we held that a master's duty to provide the servant with a reasonably safe place to work is nondelegable, and that the master cannot escape liability on the theory that he had delegated the performance of this duty to a competent independent contractor.

We therefore hold that, where, as here, the bank carried on its banking business during the time the cleaning and renovating of its lobby was being effected, it owed a duty to its invitees to provide and maintain a safe place for the carrying on of its business, and that the performance of such duty was nondelegable.

The contractor, which also assumed the performance of this duty to the bank's invitees, cannot escape liability for the same reason.

A careful examination of the pleadings and the proof convinces us that none of the theories appellants attempted to assert by their requested instructions is applicable under the facts of this case. The trial court did not err in refusing to give the requested instructions, and in denying appellants' motions for a new trial.

The judgment of the trial court is affirmed.

ALL CONCUR.