Jose Domingo **COLMENARES VIVAS**,
et al., Plaintiffs, Appellants,

v.

**SUN ALLIANCE INSURANCE COMPA-
NY**, et al., Defendants, Appellees.

No. 86–1204.

United States Court of Appeals,
First Circuit.

Argued Oct. 9, 1986.
Decided Dec. 29, 1986.

Harold D. Vicente, Santurce, P.R., with whom Hector Cuebas Tanon, San Juan, P.R., and Harold D. Vicente Law Offices, Santurce, P.R., were on brief, for plaintiffs, appellants.

Francisco Agrait-Oliveras, Hato Rey, P.R., for defendant, appellee Sun Alliance Ins. Co.

Francisco J. Colon Pagan with whom Cordero, Colon & Miranda, Old San Juan, P.R., was on brief, for defendant, appellee Westinghouse Elec. Corp.

Before BOWNES, Circuit Judge, BROWN,* Senior Circuit Judge, and TORRUELLA, Circuit Judge.

BOWNES, Circuit Judge.

Appellants are plaintiffs in a diversity action to recover damages for injuries they suffered in an accident while riding an escalator. After the parties had presented their evidence, the defendants moved for and were granted a directed verdict. The court held that there was no evidence of negligence and that the doctrine of res ipsa loquitur, which would raise a presumption of negligence, did not apply. We reverse the directed verdict and remand the case to the district court because we hold that res ipsa loquitur does apply.

## I. BACKGROUND

The relevant facts are not in dispute. On February 12, 1984, Jose Domingo Colmenares Vivas and his wife, Dilia Arreaza de Colmenares, arrived at the Luis Munoz Marin International Airport in Puerto Rico. They took an escalator on their way to the Immigration and Customs checkpoint on the second level. Mrs. Colmenares was riding the escalator on the right-hand side, holding the moving handrail, one step

* Of the Fifth Circuit, sitting by designation.

ahead of her husband. When the couple was about halfway up the escalator, the handrail stopped moving, but the steps continued the ascent, causing Mrs. Colmenares to lose her balance. Her husband grabbed her from behind with both hands and prevented her from falling, but in doing so, he lost his balance and tumbled down the stairs. Mr. and Mrs. Colmenares filed a direct action against the Sun Alliance Insurance Company (Sun Alliance), who is the liability insurance carrier for the airport's owner and operator, the Puerto Rico Ports Authority (Ports Authority). Sun Alliance brought a third-party contractual action against Westinghouse Electric Corporation (Westinghouse) based on a maintenance contract that required Westinghouse to inspect, maintain, adjust, repair, and replace parts as needed for the escalator and handrails, and to keep the escalator in a safe operating condition.

Six days before the trial was scheduled to begin, appellants filed a motion to amend their complaint to allege that Westinghouse was directly liable for their injuries. Westinghouse opposed the motion and asked that it be allowed time to conduct discovery before the trial if the motion were granted. The court denied appellants' motion.

The trial was conducted on January 30 and 31, 1986. Appellants called four witnesses. The Ports Authority's contract and maintenance supervisor testified about his daily weekday inspections of the escalator, about the maintenance contract with Westinghouse, about inspection and maintenance procedures, and about the accident report and subsequent repair and maintenance of the escalator.[1] The Ports Authority's assistant chief of operations testified about the accident report. Appellants' testimony concerned the accident and their injuries.

Sun Alliance moved for a directed verdict. Appellants argued in opposition that the evidence presented was sufficient to show negligence and, in the alternative, that res ipsa loquitur should be applied to raise an inference that the Ports Authority had been negligent. At this point the court decided to allow the trial to continue. Sun Alliance and Westinghouse submitted their case on the basis of the testimony already presented and Sun Alliance renewed its motion for a directed verdict. After hearing the parties' arguments, the court ruled that there was no evidence that the Ports Authority had been negligent, and that the case could not go to the jury based on res ipsa loquitur because at least one of the requirements for its application—that the injury-causing instrumentality was within the exclusive control of the defendant—was not met.

Appellants argue that the district court erred in three ways: (1) by not applying res ipsa loquitur; (2) by granting Sun Alliance's second motion for a directed verdict after it already had denied such a motion on the same evidence; and (3) by not allowing the appellants to amend their complaint to allege that Westinghouse was directly liable for their injuries.

## II. RES IPSA LOQUITUR

Under Puerto Rico law, three requirements must be met for res ipsa loquitur ("the thing speaks for itself") to apply: "(1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of defendant; [and] (3) it must not be due to any voluntary action on the part of plaintiff." *Community Partnership v. Presbyterian Hosp.*, 88 P.R.R. 379, 386 (1963). If all three requirements are met, the jury may infer that the defendant was negligent

---

1. A record of a subsequent repair made to the escalator was admitted to impeach the contract and maintenance supervisor's testimony. The record indicated that a sprocket was changed on February 23 in making repairs to the right-hand side handrail. Because appellants presented their case and base this appeal on the applicability of res ipsa loquitur, we do not consider whether evidence of this repair required the court to submit the case to the jury on the issue of negligence.

even though there is no direct evidence to that effect. *Id.* at 398.

## A. The First Requirement: Inference of Negligence

■ The first requirement that must be met for res ipsa loquitur to apply is that "the accident must be such that in the light of ordinary experience it gives rise to an inference that someone has been negligent." *Community Partnership v. Presbyterian Hosp.*, 88 P.R.R. at 388–89. It is not clear to us whether the district court decided that this requirement was met, although the court did suggest that it was giving the benefit of the doubt on this question to the appellants. We hold that this requirement was met because an escalator handrail probably would not stop suddenly while the escalator continues moving unless someone had been negligent.[2]

This requirement would not be met if appellants had shown nothing more than that they had been injured on the escalator, because based on this fact alone it would not be likely that someone other than the appellants had been negligent. *See Conway v. Boston Elevated Ry. Co.*, 255 Mass. 571, 574, 152 N.E. 94, 94–95 (1926) (negligence element not satisfied when all that had been shown was that a child's hand had been caught beneath the escalator handrail belt); *Fuller v. Wurzburg Dry Goods Co.*, 192 Mich. 447, 448–49, 158 N.W. 1026, 1026 (1916) (negligence may not be inferred from a fall on an escalator because the plaintiff did not show that the escalator

was improperly constructed or that it malfunctioned). Here, it was not disputed that the handrail malfunctioned and stopped suddenly, an event that foreseeably could cause riders to lose their balance and get injured. Thus, the evidence gave rise to an inference that someone probably had been negligent in operating or maintaining the escalator, and the first requirement for the application of res ipsa loquitur was met.

## B. The Second Requirement: Exclusive Control

■ The second requirement for res ipsa loquitur to apply is that the injury-causing instrumentality—in this case, the escalator—must have been within the exclusive control of the defendant. The district court found that this requisite was not met, despite the parties' stipulation that "[t]he escalator in question is property of and is under the control of the Puerto Rico Ports Authority." We agree that this stipulation was not by itself enough to satisfy the res ipsa loquitur requirement. It did not exclude the possibility that someone else also had control over the escalator; indeed, the stipulation said that Westinghouse maintained the escalator. We hold, however, that the Ports Authority effectively had exclusive control over the escalator because the authority in control of a public area has a nondelegable duty to maintain its facilities in a safe condition.

■ Few courts have required that control literally be "exclusive." *See* F. Harper, F. James & O. Gray, *The Law of*

---

**2.** In some jurisdictions, the courts have taken the position that escalator operators are common carriers owing the highest degree of care to their passengers. *See, e.g., Domany v. Otis Elevator Co.*, 369 F.2d 604, 614 (6th Cir.1966) (applying Ohio law), *cert. denied*, 387 U.S. 942, 87 S.Ct. 2073, 18 L.Ed.2d 1327 (1967); *May Dep't Stores Co. v. Bell*, 61 F.2d 830, 834–35 (8th Cir.1932) (relying on Pennsylvania and Ohio law). *See generally* Annotation, *Liability for Injury on, or in Connection with, Escalator*, 66 A.L.R.2d 496, 499–501 (1959) (collecting cases). This classification is potentially of much significance, because in Puerto Rico a public carrier owes the highest degree of care possible to its passengers. *See Munoz v. New York & Puerto Rico S.S. Co.*, 72 D.P.R. 543, 546 (1951). More-

over, an injury to a passenger on a common carrier may constitute a *prima facie* case of negligence. *See, e.g., May Dep't Stores Co. v. Bell*, 61 F.2d at 835; *cf. Ott v. J.C. Penney Co.*, 360 So.2d 524, 525–26 (La.Ct.App.1978) (an escalator operator is a common carrier, but a plaintiff must at least show the occurrence of an unusual event for res ipsa loquitur to apply). To our knowledge, the Puerto Rico courts have not equated escalators to common carriers, and such a determination is not properly made by this court in the first instance. For the purposes of this appeal, however, it would not matter if the stricter standard did apply, because we hold that an inference of negligence has been raised even under the lower reasonable care standard.

*Torts* § 19.7, at 45 (2d ed. 1986). The Supreme Court, reviewing a case in which this court applied the exclusive control requirement literally, said that the question "really is not whether the application of the rule relied on fits squarely into some judicial definition, rigidly construed," because such an approach unduly restricts "the jury's power to draw inferences from facts." *Jesionowski v. Boston & Maine R.R.*, 329 U.S. 452, 457, 67 S.Ct. 401, 91 L.Ed. 416 (1946) (reversing 154 F.2d 703 (1st Cir.)). The exclusive control requirement, then, should not be so narrowly construed as to take from the jury the ability to infer that a defendant was negligent when the defendant was responsible for the injury-causing instrumentality, even if someone else might also have been responsible. The purpose of the requirement is not to restrict the application of the res ipsa loquitur inference to cases in which there is only one actor who dealt with the instrumentality, but rather "to eliminate the possibility that the accident was caused by a *third party*." *Community Partnership v. Presbyterian Hosp.*, 88 P.R.R. at 390 (emphasis added); *see also Giacalone v. Raytheon Mfg. Co.*, 222 F.2d 249, 252 (1st Cir.1955) ("[I]n the absence of evidence of control no inference of causal negligence on the part of the defendant can be drawn from the improper functioning of the instrumentality, for it would be just as probable that the negligence of someone other than the defendant caused it to function improperly with injurious consequences."). It is not necessary, therefore, for the defendant to have had actual physical control; it is enough that the defendant, and not a third party, was ultimately responsible for the instrumentality. Thus, res ipsa loquitur applies even if the defendant shares responsibility with another, or if the defendant is responsible for the instrumentality even though someone else had physical control over it. *See* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 39, at 250–51 (5th ed. 1984) (exclusive control requirement met in a variety of circumstances in which the defendant did not have sole responsibil-

ity or physical control over the injury-causing instrumentality); *see also Otis Elevator Co. v. Yager*, 268 F.2d 137, 143 (8th Cir.1959) (property owner and not maintenance company had exclusive control over elevator); Restatement (Second) of Torts § 328D comment g (1965) (exclusive control requirement may be met even though responsibility was shared or someone else had physical control). It follows that a defendant charged with a nondelegable duty of care to maintain an instrumentality in a safe condition effectively has exclusive control over it for the purposes of applying res ipsa loquitur. *See* F. Harper, F. James & O. Gray, *The Law of Torts* § 19.7, at 47 (2d ed. 1986) (exclusive control requirement met if defendant had nondelegable duty); W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 39, at 250–51 (5th ed. 1984) (same); Restatement (Second) of Torts § 328D comment g (1965) (same). Unless the duty is delegable, the res ipsa loquitur inference is not defeated if the defendant had shifted physical control to an agent or contracted with another to carry out its responsibilities.

■ We hold that the Ports Authority could not delegate its duty to maintain safe escalators. There are no set criteria for determining whether a duty is nondelegable; the critical question is whether the responsibility is so important to the community that it should not be transferred to another. *See* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 71, at 512 (5th ed. 1984). The Ports Authority was charged with such a responsibility. It was created for a public purpose, which included the operation and management of the airport. *See* P.R. Laws Ann. tit. 23, §§ 333, 336 (1964). A concomitant of this authority is the duty to keep the facilities it operates in a reasonably safe condition. The public is entitled to rely on the Ports Authority—not its agents or contractors—to see that this is done. The Ports Authority apparently recognized this responsibility, for its maintenance and contract supervisor conducted

daily weekday inspections of the escalators despite the maintenance contract with Westinghouse.

Duties have been seen as nondelegable in several analogous situations. For example, a public authority may not delegate to an independent contractor its responsibility to see that work in a public place is done carefully. *See, e.g., Snyder v. Southern Cal. Edison Co.*, 44 Cal.2d 793, 799, 285 P.2d 912, 915 (1955) ("Where an activity involving possible danger to the public is carried on under public franchise or authority the one engaging in the activity may not delegate to an independent contractor the duties or liabilities imposed on him by the public authority...."); Restatement (Second) of Torts § 417 (1965) (restating general principle that there is a nondelegable duty to see that work in a public place is carefully done). Also, a government may not delegate its responsibility to maintain safe roads and similar public places. *See, e.g., Lopes v. Rostad*, 45 N.Y.2d 617, 624, 412 N.Y.S.2d 127, 129, 384 N.E.2d 673, 675, 412 N.Y.S.2d 127, 129 (1978) (governmental body has nondelegable duty to maintain safe roads); Restatement (Second) of Torts § 418 (1965) (restating general principle that there is a nondelegable duty to maintain safe highways and other public places). Finally, an owner has a nondelegable duty to keep business premises safe for invitees. *See, e.g., Blancher v. Bank of Cal.*, 47 Wash.2d 1, 9, 286 P.2d 92,

96 (1955) (bank had nondelegable duty to keep its premises reasonably safe); Restatement (Second) of Torts § 344 (1965) (restating general principle that there is a nondelegable duty to keep business premises safe). These examples demonstrate a general tort law policy not to allow an entity to shift by contract its responsibility for keeping an area used by the public in a safe condition. It would be contrary to this policy to allow the owner and operator of an airport terminal to delegate its duty to keep its facility safe. We hold, therefore, that the district court erred in ruling that the exclusive control requirement was not met.[3]

### C. The Third Requirement: The Plaintiffs' Actions

The third requirement that must be met for res ipsa loquitur to apply is that the accident must not have been due to the plaintiff's voluntary actions. The district court found, and we agree, that there was no evidence that Mr. and Mrs. Colmenares caused the accident. Indeed, there is no indication that they did anything other than attempt to ride the escalator in the ordinary manner. Therefore, we hold that all three requirements were met and that the jury should have been allowed to consider whether the Ports Authority was liable based on the permissible inference of negligence raised by the application of res ipsa loquitur.[4]

---

**3.** Sun Alliance and Westinghouse point to our opinion in *Lee v. El Fenix de Puerto Rico*, 739 F.2d 24 (1st Cir.1984), for the proposition that the Ports Authority did not have exclusive control over the escalator. In that case, the plaintiff was injured when a light bulb on the balcony of her hotel room exploded, cutting her arms and face. The district court reasoned, and we agreed, that the cause of the explosion probably was a product defect. Because the manufacturing of the bulb was not within the defendant's control, res ipsa loquitur did not apply. *Id.* at 25–26. In this case, however, the appellants' injuries were caused by a mechanical malfunction, which probably was the result of faulty inspection and maintenance procedures. It is not very probable, as it was in *Lee*, that a product defect was involved. Moreover, a light bulb on a balcony is subject to a variety of external elements that may cause it to break,

while only a limited number of personnel attend to the inner workings of an escalator, where the malfunction in this case likely occurred.

**4.** As an additional ground for reversing the directed verdict, appellants argue that the district court erred in granting a directed verdict after it already had denied such a motion on the same evidence. Because we hold that the jury should have been allowed to decide the issue of liability on the basis of res ipsa loquitur, it is not necessary for us to consider whether the timing of the court's decision also was improper. It does not seem unreasonable, however, for a court to grant a renewed motion for a directed verdict, even though it denied the motion after the plaintiffs' evidence had been presented, after having heard that no additional testimony will be presented and after having had the benefit of

## III.  THE MOTION TO AMEND THE COMPLAINT

■ Appellants contend that the court should have allowed them to amend their complaint to allege that Westinghouse was directly liable for their injuries. After a responsive pleading has been served, "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R. Civ.P. 15(b). The decision to grant or deny a motion to amend a complaint is left to the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Carter v. Supermarkets Gen. Corp.*, 684 F.2d 187, 192 (1st Cir.1982). But if the court decides not to grant leave to amend, it must do so for a valid reason such as bad faith by the moving party, unwarranted delay, or undue prejudice to the opposing party. *Foman v. Davis*, 371 U.S. at 182, 83 S.Ct. at 230; *Carter v. Supermarkets Gen. Corp.*, 684 F.2d at 192; *Farkas v. Texas Instruments, Inc.*, 429 F.2d 849, 851 (1st Cir.1970), *cert. denied*, 401 U.S. 974, 91 S.Ct. 1193, 28 L.Ed.2d 324 (1971).

■ The district court had valid reasons not to grant the appellants' motion to amend their complaint. Westinghouse would have been prejudiced if it became a defendant in a direct action only six days before the trial. It had conducted discovery and prepared its case on the basis of a contractual indemnity complaint, not direct liability. Granting leave to amend would have necessitated a postponement of the trial to allow Westinghouse to conduct additional discovery. Such a delay may be warranted if additional evidence had come to light, but the appellants did not point to any such change of circumstances. They claim that the change was necessary because Westinghouse raised affirmative defenses of comparative negligence and exaggerated claims less than two weeks before the trial was scheduled to begin, but they do not explain how this might have affected their decision to bring a direct action

counsels' arguments on the applicability of res

against only the Ports Authority's insurer. Given the discretion the district court had in this matter, we hold that it did not err by denying the appellants' motion to amend their complaint.

*Reversed in part, affirmed in part. Remanded.*

TORRUELLA, Circuit Judge (dissenting).

I must regretfully dissent. The doctrine established in *Erie R.R. Company v. Tomkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), has particular significance in cases involving Puerto Rican tort law (*derecho de daños*), in which the Supreme Court of Puerto Rico has stated that "both as to its form and content, the tort law applicable in Puerto Rico is the civil law system." *Valle v. Amer. Inter. Ins. Co.*, 108 D.P.R. 692, 695 (1979) (my translation). In *Valle*, "the utilization of common law precepts to resolve civil law problems" was specifically rejected. *Id.* at 696–97 (my translation).

Although the majority correctly states the Puerto Rican law as to *res ipsa loquitur, Community Partnership v. Presbyterian Hosp.*, 88 P.R.R. 379, 386 (1963) (for *res ipsa loquitur* to apply "(1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of defendant; [and] (3) it must not be due to any voluntary action on the part of plaintiff."), it overlooks well-established jurisprudence in applying that law to the circumstances of this case.

The majority concludes that the first requirement of *res ipsa loquitur*, i.e., inference of negligence arising from the occurrence of the accident, "was met because an escalator handrail probably would not stop suddenly while the escalator continues moving unless someone had been negligent." *Ante*, at 5. Although disclaiming reliance on the common law cases cited therein as *ratio decidendi* for its conclu-

ipsa loquitur.

sions, the majority, in footnote 2, cites various cases which stand for the dubious proposition that an escalator is a common carrier.[5] *Id.* n. 2.

In my view, *solely* because the handrail stopped and Mrs. Colmenares fell, without further evidence as to why or how the handrail malfunctioned, does not give rise to an inference of *negligence* by the Ports Authority. *See Widow of Blanco v. Metropolitan Bus Authority*, 89 P.R.R. 722 (1963); *Neváres v. Municipality of Vega Baja*, 101 P.R.R. 103 (1973). The case of *Widow of Blanco* is particularly *a propos* because it *did* involve a public carrier, a bus company, and the accident was similar in nature to that alleged in the present case, i.e., a passenger fell when the bus she was riding suddenly lurched. Yet, notwithstanding the high standard of care required in that case,[6] and the total control exercised by the bus company over the instrumentality causing the accident, the Supreme Court of Puerto Rico stated that "a carrier is not an insurer," *id.* at 723, and refused to find an inference of negligence merely from the fact that the passenger fell as a result of the bus' sudden, unexpected lurch. *Id.* at 724. In *Neváres v. Municipality of Vega Alta, supra,* that Court specifically refused to apply *res ipsa loquitur* to the fall of a lighting pole at a public plaza, concluding that such an event, without additional proof, did not raise an inference of negligence. *Id.* at 109.

The malfunctioning of an escalator presents an even stronger argument against the raising of an inference of negligence without additional proof as to the cause of the malfunction. Although a court can take notice that an escalator is a

complicated piece of machinery, it has no basis of common knowledge for inferring that its malfunction is the result of the operator's negligence.[7] Expert testimony is required to establish the basis for such an inference. *Community Partnership v. Presbyterian Hospital*, 88 P.R.R. at 389. *See also* Fed.R.Evid. 702.

Puerto Rican tort law is enacted in Article 1802 of the Civil Code, 31 L.P.R.A. § 5141, which succinctly states: "A person who by an act or omission causes damage to another through fault [*culpa*] or negligence shall be obliged to repair the damage so done." Fault (*culpa*) involves delictive conduct of an affirmative or voluntary nature. *Reyes v. Heirs of Sánchez Soto*, 98 P.R.R. 299, 303–04 (1970). Civil law negligence is "not anticipating and foreseeing the rational consequences of an act, or of the failure to perform an act which a prudent person could have foreseen under the same circumstances." *Ramos v. Carlo*, 85 P.R.R. 337, 342 (1962); *Ramírez v. American R.R. Company of P.R.*, 17 P.R.R. 440 (1911). The essence of fault or negligence lies in the lack of diligence and foresight on the part of the wrongdoer. *See* J. Castán, *Derecho Civil Español, Común y Foral*, at 146 (8th ed. 1954). Appellant presented no evidence from which a jury could infer lack of diligence or foresight by appellees, and thus negligence.

Because of the above, I respectfully dissent.

---

**5.** Traditionally, even at common law, a common carrier is one "required by law to convey passengers or freight without refusal if the approved fare or charge is paid." *Black's Law Dictionary* 249 (5th ed. 1979).

**6.** The Court referred to the standard required, as "the highest degree of care and prudence." *Widow of Blanco*, 89 P.R.R. at 724.

**7.** Even in a common law jurisdiction one court has refused to apply *res ipsa loquitur* to falls

caused by escalator malfunctions, because "among the causes of bumping on an escalator are foreign objects, such as parts of sneakers, buttons, etc. dropped by passengers on the escalator, which have eluded the combing mechanism ... and gotten swept into the internal workings of the machinery." *Birdsall v. Montgomery Ward and Co., Inc.*, 109 A.D.2d 969, 486 N.Y.S.2d 461 (N.Y.App.Div.), *aff'd*, 65 N.Y.2d 913, 493 N.Y.S.2d 456, 483 N.E.2d 131 (N.Y. 1985).