<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                United States Court of Appeals
                    For the First Circuit

No. 98-1985

                    ANANIAS GRAJALES-ROMERO,

                      Plaintiff, Appellee,

                               v.

                    AMERICAN AIRLINES, INC.,

                     Defendant, Appellant.

No. 98-2144

                    ANANIAS GRAJALES-ROMERO,

                     Plaintiff, Appellant,

                               v.

                    AMERICAN AIRLINES, INC.,

                      Defendant, Appellee.

          APPEAL FROM THE UNITED STATES DISTRICT COURT

               FOR THE DISTRICT OF PUERTO RICO

    [Hon. Carmen Consuelo Cerezo, Chief U.S. District Judge]

                             Before

                  Lynch, Noonan,* and Lipez,
                        Circuit Judges.
                                
                                
                                
                                
                     
    *Of the Ninth Circuit, sitting by designation.

    Luis A. Oliver-Fraticelli, with whom Jay A. Garca-Gregory and
Fiddler, Gonzlez & Rodrguez were on brief for American Airlines,
Inc.
    Jos Luis Ubarri-Garca, with whom David W. Romn and Brown &
Ubarri were on brief for Ananas Grajales-Romero.

October 26, 1999

                                
                                

 LIPEZ, Circuit Judge. American Airlines, Inc. appeals
from a judgment of $150,000 in favor of Ananas Grajales-Romero,
who was injured by a collapsing check-in counter sign at an airport
in St. Kitts.  American claims that the court erred in allowing the
case to go to the jury on the plaintiff's theory that American was
liable for the negligence of Executive Airlines, d/b/a/ American
Eagle, which American argues actually owned, operated, and
maintained the check-in counter.  American further claims that
there was insufficient evidence of negligence to sustain the jury
verdict in this case, and that the court erred by not vacating or
remitting the damages award, striking certain defense witnesses,
admitting some evidence offered by plaintiff, and refusing to give
several jury instructions proposed by American.  Grajales cross-
appeals, claiming that the court erred in not awarding attorney's
fees on the basis of the "obstinacy" of the defendants.  We affirm.
                              I.
Factual background
 We present the facts as a jury might have found them,
consistent with the record but in the light most favorable to the
verdict.  See Cumpiano v. Banco Santander Puerto Rico, 902 F.2d
148, 151 (1st Cir. 1990).  On July 29, 1994, Plaintiff Ananas
Grajales-Romero ("Grajales") was waiting in line at an American
Eagle check-in counter in the St. Kitts airport for a return
flight to San Juan, Puerto Rico.  His acquaintance Terry Connor had
accompanied him to the check-in counter.  Connor attempted to load
Grajales's luggage onto the weigh-in scale adjacent to the check-in
counter.  In doing so, he grabbed onto an ashtray built into the
countertop to gain some leverage in lifting the luggage.  The
countertop was attached by a hinge to the vertical front facing of
the counter.  When Connor pulled on the ashtray, the countertop
came loose, and pivoted forward on its hinge.  A metal signpost and
sign were attached to the countertop, and this signpost and sign
also pivoted forward with the countertop.  As this was happening,
plaintiff Grajales was looking down at his ticket.  The signpost
and/or sign struck Grajales on the top of his head, opening up a
two-inch long wound.  Although he did not lose consciousness or
fall to the floor, he was taken to the St. Kitts hospital, where he
received four stitches.  After the accident, Grajales experienced
neck pains, headaches, and forgetfulness.  He was diagnosed by a
neurologist as suffering from post-concussion syndrome and a
cervical sprain secondary to the accident.  
 Grajales filed a complaint against American, AMR Corp.,
and AMR Eagle, Inc. in the federal district court for the District
of Puerto Rico on July 28, 1995. On February 11, 1997, the district
court dismissed the claims against co-defendants AMR Corp. and AMR
Eagle, Inc. for lack of personal jurisdiction.  During the course
of trial, held from May 20 to May 27, 1998, American claimed that
its witnesses Tomas del Valle and Fred Voltaggio were unavailable
because they had been transferred to other positions with American.
In their place, American offered the testimony of employees who now
held the posts vacated by del Valle and Voltaggio; however, the
court struck the replacement witnesses because they had not been
disclosed in the course of pre-trial discovery.  While Voltaggio
eventually testified, del Valle did not, and the court granted a
missing witness instruction telling the jurors that they could
infer that the testimony of del Valle would have been unfavorable
to American.  The court refused to give an instruction on the
doctrine of res ipsa loquitur requested by Grajales, and refused
several instructions offered by American.  The jury found American
liable in the amount of $150,000.  The court issued its judgment
accordingly, and refused Grajales' claim for attorney's fees under
Puerto Rican law.  Both parties appealed.
                             II.
Agency by Apparent Authority
 American argues that there was insufficient evidence to
support a finding that it was liable under agency principles for
any negligence by Executive Airlines.  It claims that the theories
advanced by Grajales to establish American's liability for the
accident   namely, agency by estoppel and agency by apparent
authority   were a subterfuge allowing Grajales to forum-shop into
federal court, where he was entitled to a jury trial.  See Marshall
v. Perez Arzuaga, 828 F.2d 845, 849 (1st Cir. 1987) ("Puerto Rico,
a civil law jurisdiction, never uses juries in civil cases").  We
will address only Grajales's "apparent authority" claim, which
provides an adequate basis for American's liability.
 Under Puerto Rico law, an apparent principal may be held
liable for the acts of its apparent agent where the apparent
principal's actions "led the plaintiffs to reasonably believe [in
its] representation" of authority and control over the apparent
agent, through the apparent principal's conduct, including its
"silence, evasive language and appearances."  Berros v. U.P.R.,
116 D.P.R. 88, 16 P.R. Offic. Trans. 112, 122 (1985).  The Supreme
Court of Puerto Rico has applied the doctrine where "persons who
used the services of the [apparent agent] could not possibly know
or had no way of knowing that the entity they were dealing with was
not" the apparent principal or an agent thereof.  Id. at 122-23.
The Court has also applied the doctrine where the plaintiff
"trusted in good faith" in defendant's conduct, and where that
"trust could lead a reasonable person to believe that in fact there
was a principal-agent relationship."  Vega v. Medical Serv. Admin.,
117 D.P.R. 138, 17 P.R. Offic. Trans. 163, 173 (1986).
 The evidence produced at trial was more than sufficient
to allow a reasonable jury to conclude that Grajales trusted in
good faith in conduct that "could lead a reasonable person to
believe that in fact there was a principal-agent relationship."
Specifically, the jury could have found that Grajales's ticket,
issued by American Airlines, identified the carrier as "AA," an
abbreviation for American Airlines.  The telephone information line
for American Eagle flights is the American Airlines telephone
information line.  The passenger check-in counters in both San Juan
and St. Kitts bore American Airlines logos as well as American
Eagle logos.  The in-flight magazines on Grajales's flight were the
American Airlines magazines "American Ways" and "Latitudes." The
personnel staffing the flights wore uniforms and nametags closely
resembling American Airlines uniforms and nametags.  American
Airlines' destination guide (a schedule of flight availability)
lists St. Kitts as a destination.  Grajales testified that he
relied on such information in choosing to fly with American Eagle,
and that he assumed it was part of American Airlines.  A reasonable
jury could conclude from these facts that American's conduct led
Grajales reasonably to believe that there was in fact a principal-
agent relationship between American and Executive Airlines d/b/a/
American Eagle, and thus American would be liable for any
negligence on the part of Executive.
                             III.
Sufficiency of the Evidence of Negligence
(a) Res Ipsa Loquitur
 American states that
   [p]laintiff produced no evidence   either through
 customary airline practices, past practices, or expert
 testimony   to establish a standard of care by which
 American should have operated. Further, plaintiff
 presented no evidence regarding the inspection,
 maintenance, and operation of the ticket counter, and
 made no attempt to explain in what manner any such
 conduct might have constituted negligence.

From these assertions, and the fact that the court refused to give
the jurors Grajales's proposed res ipsa loquitur instruction,
American argues that "[n]o jury could reasonably conclude that
American exercised less than reasonable care from the unexplained
fact that an accident occurred."   
 We agree with American that Grajales did not produce
either direct or circumstantial evidence explaining how American
violated its duty of care.  Grajales offered no evidence, for
example, suggesting that the ticket counter had been improperly
designed, installed, maintained, or operated.  Instead, Grajales
relied on the fact of an unexpected occurrence, arguing that the
counter top would not have fallen over and struck him unless
American had violated its duty of care.  The Supreme Court of
Puerto Rico has ruled that the fact of an unexplained occurrence
cannot establish an inference of negligence unless the conditions
of res ipsa loquitur are satisfied: "(1) the accident must be of a
kind which ordinarily does not occur in the absence of someone's
negligence; (2) it must be caused by an agency or instrumentality
within the exclusive control of defendant; [and] (3) it must not be
due to any voluntary action on the part of plaintiff." See
Community Partnership v. Presbyterian Hosp., 88 P.R.R. 379, 386
(1963).  Given the lack of direct or other circumstantial evidence
on American's violation of its duty of care, we must consider
whether the conditions of res ipsa loquitur were satisfied here.
 We conclude that they were.  Indeed, the first two
elements of res ipsa loquitur were easily established.  A
reasonable jury could have concluded that the accident was of a
kind which "ordinarily does not occur in the absence of someone's
negligence," and that the accident was "caused by an . . .
instrumentality within the exclusive control of [the] defendant."  
See Colmenares-Vivas v. Sun Alliance Ins. Co., 807 F.2d 1102, 1106
(1st Cir. 1986) ("[R]es ipsa loquitur applies [if] . . .  the
defendant is responsible for the instrumentality") (applying Puerto
Rico law).
 The res ipsa loquitur requirement that the accident not
be caused by any "voluntary action" on the part of the plaintiff
posed a more difficult challenge for Grajales.  American argues
that a res ipsa loquitur inference was unreasonable because the
evidence indicates that plaintiff's acquaintance Connor took the
"voluntary action" of pulling on the counter-top.  Even if Connor's
actions could be attributed to Grajales, American's argument misses
its mark.  The test is not whether the plaintiff took any voluntary
action, but whether that voluntary action can be blamed for the
accident.  See De Leon Lopez v. Corporacion Insular de Seguros 931
F.2d 116, 126 (1st Cir. 1991) (plaintiff must be "free of voluntary
responsibility for the occurrence") (applying Puerto Rico law).  
The evidence here was sufficient to support a finding that Grajales
and his colorable agent Connor were blameless, having done nothing
more than "attempt to [use the instrumentality] in the ordinary
manner," Colmenares-Vivas, 807 F.2d at 1107.  So long as the jurors
could have concluded from the evidence that Connor's use of the
counter for leverage constituted a normal usage of the counter by
a customer, the jury could have inferred American's negligence.
 While there was sufficient evidence on each of the
conditions of res ipsa loquitur, the district court did not provide
the jury with a res ipsa loquitur instruction, as Grajales had
requested.  We must therefore consider an argument implicit in
American's challenge to the sufficiency of the evidence of
negligence  that a jury verdict cannot be justified on the basis
of res ipsa loquitur when the jurors were never instructed on the
doctrine.
 Puerto Rico's statement of the three elements of res ipsa
loquitur is derived from the first edition of a well-known treatise
on evidence, 4 Wigmore, Evidence  2509 (1st ed. 1905). See W. Page
Keeton et al., Prosser and Keeton on Torts 244 (Lawyer's 5th ed.
1984).  That origin confirms that a res ipsa loquitur instruction
explains to the jury a specific form of permissible inference from
circumstantial evidence of negligence.   Given this purpose, jurors
who can draw the inference of negligence even without a res ipsa
loquitur instruction should be permitted to do so.  Justice Traynor
came to the same conclusion:
         The doctrine of res ipsa loquitur concerns a
         type of circumstantial evidence upon which
         plaintiff may rely to discharge his burden of
         proving defendant's negligence. . . .  There
         is no reason why the jury may not draw that
         inference without, as well as with, a specific
         instruction authorizing them to do so.  
          
See Rose v. Melody Lane, 247 P.2d 335, 339 (Cal. 1952).  In this
case, the jurors were adequately instructed on inference and
circumstantial evidence, and Grajales made the specific inference
contemplated by a res ipsa loquitur instruction the linchpin of his
theory of the case.  Given that there was sufficient evidence on
each of the res ipsa loquitur requirements, the jurors were
entitled to make the res ipsa loquitur inference even in the
absence of a specific instruction.    
(b) Proximate Cause
 American protests that there was insufficient evidence to
allow the jury to find that its negligence was the proximate cause
of Grajales's injuries.  The res ipsa loquitur doctrine only
permits an inference that the defendant engaged in negligent
conduct. See Colmenares-Vivas, 807 F.2d at 1104.  The plaintiff
still must prove that the negligent conduct was the proximate cause
of the accident.  cf. Donnelly v. National R.R. Passenger Corp.
(Amtrak), 16 F.3d 941, 946 (8th Cir. 1994) ("res ipsa loquitur has
no application to proximate cause") (North Dakota law); Daniels v.
Twin Oaks Nursing Home, 692 F.2d 1321, 1328 (11th Cir. 1982) (same)
(Alabama law).   
 In Puerto Rico, to establish proximate cause, the
plaintiff must prove that an accident was foreseeable and could
have been avoided if the defendant had not breached its duty of
care.  See Coyne v. Taber Partners I, 53 F.3d 454, 459 (1st Cir.
1995); Marshall v. Perez Arzuaga, 828 F.2d 845, 847 (1st Cir.
1987).  The defendant can defeat proximate causation by proving the
occurrence of an "intervening cause" that was not foreseeable.  See
Malave-Felix v. Volvo Car Corp., 946 F.2d 967, 972 (1st Cir. 1991).
 A reasonable jury could easily have found that Grajales
satisfied his proximate causation burden.  See Coyne 53 F.3d at 460
("[S]uch questions ordinarily are grist for the factfinder's
mill.").  There was ample evidence produced at trial that
American's negligence   its failure to secure the countertop
properly   created a foreseeable risk of an accident of the general
type involved in this case.  See Malave-Felix 946 F.2d at 972
("precise risk" or "exact result" need not be foreseeable).  
Moreover, American did not offer sufficient evidence of an
unforeseeable intervening cause to compel us to reverse.  As we
noted in our discussion of res ipsa loquitur, a reasonable jury
could have concluded that Connor's actions were blameless.  For the
same reasons, a jury could have concluded that a customer's use of
the counter for leverage was not the type of unforeseeable event
that creates an "intervening cause" and clears American of causal
responsibility.   
                             IV.
American's miscellaneous objections
(a) Exclusion of substitute witnesses
 In response to Grajales's interrogatories (and also in an
initial scheduling memorandum), American indicated that its trial
witnesses would include Tomas del Valle, who was president of
Executive Airlines at the time of the accident, and Fred Voltaggio,
who was Manager for Support Services for American Airlines at that
time.  American then attempted, in its proposed pretrial order, to
substitute Jos Machado, current Vice President of Flight
Operations for Executive Airlines, for del Valle, who had left
Executive Airlines to become the Managing Director for American's
operations at Los Angeles International Airport.  American also
attempted to substitute Ernesto Quidgley, Manager for Support
Services for American Airlines, for Voltaggio, who had become
regional manager for American Airlines' Carribean cargo sales by
the time of trial.  
 Grajales filed a motion before a magistrate judge  
opposing the witness substitutions on the grounds that the new
witnesses had not been properly disclosed during the course of
discovery.  The magistrate judge granted that motion on May 14,
1998.  Four days later, American filed a motion before the trial
court seeking reconsideration of the magistrate judge's ruling.  
The trial court agreed to reconsider the matter but, in an oral
order on May 20, 1998, it reaffirmed the magistrate judge's ruling
and excluded the substitute witnesses as a discovery sanction for
American's failure to disclose them in the appropriate pretrial
disclosures as required by Fed. R. Civ. P. 37(c)(1).  
 Rule 37(c)(1) provides an exclusionary sanction for
failures to disclose witnesses as required by Fed. R. Civ. P. 26:
"A party that without substantial justification fails to disclose
information required by Rule 26(a) or 26(e)(1) shall not, unless
such failure is harmless, be permitted to use as evidence at trial
. . . any witness . . . not so disclosed."  A district court's Rule
37 sanctions decision is reviewed for abuse of discretion.  See
Barreto v. Citibank, 907 F.2d 15, 16 (1st Cir. 1990) (per curiam).
Here, it is undisputed that Machado and Quidgley were not disclosed
in response to plaintiff's interrogatories, as required by Rule 26.  
American offered no excuse for failing to disclose Machado and
Quidgley while discovery was open, stating only that it was now
"forced" to call upon unannounced witnesses since del Valle and
Voltaggio, its originally designated witnesses, no longer occupied
the same positions they held at the time of the accident.  The
court noted, however, that del Valle and Voltaggio, regardless of
any change in position, were currently employees of American,
subject to its control and available to testify.  On these facts,
we find no abuse of discretion in the court's refusal to allow
unannounced witnesses to testify.  
(b) "Missing Witness" Instruction
 Voltaggio testified at trial; however, del Valle, while
present during some of the trial, failed to appear on the day the
court expected him to testify.  Upon Grajales' request, the court
gave a missing witness instruction.
 A "missing witness" instruction is permissible when a
party fails to call a witness who is either (1) "favorably
disposed" to testify for that party, by virtue of status or
relationship with the party or (2) "peculiarly available" to that
party, such as being within the party's "exclusive control."  
United States v. DeLuca, 137 F.3d 24, 38 (1st Cir. 1998).   We
review the grant and denial of missing witness instructions for
abuse of discretion.  See id.   
 Del Valle had appeared in court during part of the trial
but then failed to reappear when his testimony was postponed until
the next business day.  The court found that del Valle, an employee
of American, was under its control, and that American had offered
no acceptable justification for del Valle's absence.  Thus there
was ample evidence that del Valle's status left him "favorably
disposed" to American and that he was "peculiarly available" to the
airline.  Id.  Either one of these grounds is sufficient to justify
a missing witness instruction.  Moreover, the court suggested that
American had tactical reasons for not producing del Valle.  
Specifically, del Valle's move from American Eagle to American
Airlines undercut American's efforts to emphasize the minimal
nature of the connection between the airlines.  We find no abuse
of discretion in the court's issuance of a missing witness
instruction.
(c) Admission of testimony about a non-testifying defense expert's
report
 Grajales submitted to a medical examination performed by
Dr. Juan J. Fumero-Prez ("Fumero"), an expert witness hired by
American.  American provided Dr. Fumero's report to Grajales, as
required under Fed. R. Civ. P. 35(b).  In this report, Dr. Fumero
concluded that Grajales was suffering from a post-concussion
syndrome.  Apparently unhappy with this news, American notified
Grajales that it was designating Fumero a non-testifying expert
witness under Fed. R. Civ. P. 26(b)(4)(B).  At trial, the court
allowed Grajales to extract a brief mention of Fumero's conclusions
from both American's medical expert and two medical experts hired
by Grajales, Dr. Boris Rojas-Rodriguez  and  Dr. Maria T. Margarida
Julia.  The court also allowed Grajales to introduce evidence that
American had initially hired Fumero. American argues that the
references to the Fumero report were inadmissible hearsay and
violated Fed. R. Civ. P. 26(b)(4)(B).   American also argues that
evidence of the fact that it hired Fumero was unduly prejudicial
under Fed. R. Evid. 403.
 We decline to consider American's hearsay challenge to
this evidence because it was not presented below.  Assuming
arguendo that American's other objections were valid, we find that
any error in the admission of this evidence was harmless.  See Fed.
R. Civ. P. 61.  Grajales invoked only brief references to the
Fumero report from the three experts, and Fumero's conclusions were
cumulative of evidence presented convincingly and at great length
by Grajales's experts.  American's "substantial rights" were thus
unaffected.  Id.
(d) American's proposed instructions
 American objects to the court's refusal to give three
proposed jury instructions. "The function of the appellate court
with respect to jury instructions is to satisfy itself that the
instructions show no tendency to confuse or mislead the jury with
respect to the applicable principles of law."  Harrington v. United
States, 504 F.2d 1306, 1317 (1st Cir. 1974). "Beyond that, the
district court's choice of jury instructions is a matter of
discretion."  Calhoun v. Acme Cleveland Corp., 798 F.2d 559, 564
(1st Cir. 1986); see also Kelley v. Airborne Freight Corp., 140 F.3d
335, 355 (1st Cir. 1998) (reviewing refusal of instruction for abuse
of discretion).
(1). Use of trademark as evidence of apparent authority
 The court refused to give American's proposed final
instruction #25, which stated in relevant part that "[t]he mere use
of the trademark name, logo and color scheme by a third party is not
a legal indication that the owner of the name or logo has actual or
apparent control" over the apparent agent.  The court did give a
broader instruction on apparent authority, not challenged on appeal,
which closely tracked the Puerto Rico Supreme Court's articulation
of the doctrine in Berros. The failure to include a more detailed,
supplemental instruction, even if accurate, is not error. See
Marbucco Corp. v. Suffolk Constr. Co., 165 F.3d 103, 106 (1st Cir
1999).  
(2). Failure to maintain proper medical records  
 Dr. Rojas, a neurologist, examined Grajales and testified
on his behalf as an expert witness.  He was not, however, Grajales'
treating physician and the medical examination was performed solely
to assist Dr. Rojas in the preparation of his testimony.  Dr. Rojas
testified that he prepared his report on Grajales from handwritten
rough notes and then discarded the notes.  American requested an
instruction stating that a doctor's failure to "properly maintain
his medical records . . . diminishes the effectiveness of the
records as a reference tool for evaluation of the treatment,
attention and care the doctor gave the patient" and "should be
considered when evaluating the credibility of the doctor regarding
the treatment he gave the patient."  The court refused to give this
instruction, ruling that the stated authority therefor, Sharon Riley
v. Rodrguez de Pacheco, 119 D.P.R. 762, 780 (1987), was
distinguishable as a case where a physician was evaluating a patient
for the purposes of treatment and not solely for litigation
purposes. That distinction is obvious from the wording of the
instruction.  In any event, the jury could have drawn the inference
described without instruction if they found that the facts merited
it.  We find no abuse of discretion in the court's refusal to give
this instruction.
(3). Definition of inference
 American submitted two supplemental instructions on the
definition of inference a few hours before the jury was to be
instructed.  The court refused to consider these new supplemental
instructions because they had been offered after the court's
announced deadline for such instructions.  The refusal to consider
these instructions as untimely was not an abuse of discretion. See
Senra v. Cunningham, 9 F.3d 168, 171 (1st Cir. 1993).
                               V.
Reasonableness of the Damages Award
 American argues that there was insufficient evidence to
support the award of $150,000.  Pursuant to the federal rule, "[a]
verdict should stand unless it is 'grossly excessive,' 'inordinate,'
'shocking to the conscience of the court,' or 'so high that it would
be a denial of justice to permit it to stand.'" Segal v. Gilbert
Color Sys., Inc., 746 F.2d 78, 80-81 (1st Cir. 1984).  Although the
defendant faces a heavy burden in meeting this standard, excessive
damage awards are not immune from review.  See,e.g., Koster v. Trans
World Airlines, Inc., 181 F.3d 24, 35-36 (1st Cir. 1999) (finding
$716,000 award for emotional distress caused by age discrimination
to be excessive, and limiting recovery to $250,000).  A reasonable
jury, crediting the testimony of Grajales' medical experts, could
have found that Grajales continued to suffer from both chronic neck
pain and a loss of cognitive functions, including concentration and
memory.  An award of $150,000 for such damages was not excessive.
 American also argues that the Supreme Court of Puerto
Rico reviews awards for consistency with other awards in similar
cases; that the district court should have similarly reviewed the
jury's award here, in accordance with the United States Supreme
Court's pronouncement in Gasperini v. Center for Humanities, Inc.,
518 U.S. 415 (1996), that a substantive state law standard for
review of jury awards must be applied by federal district courts
hearing cases under diversity jurisdiction; and that the award in
this case is excessive because it is inconsistent with awards
approved by the Supreme Court of Puerto Rico in similar cases.  In
a recent case we expressly rejected this Gasperini argument, based
on our reading of Puerto Rico case law: "If local law placed a
substantive cap on . . . damages, it would control, [citing
Gasperini], but Puerto Rico case law suggests no such departure from
[the] ordinary practice" of reviewing awards under the federal
standards for judging excessiveness, outlined above.  Mejias Quiros
v. Maxxam Property Corp., 108 F.3d 425, 427 n.1 (1st Cir. 1997).  
We therefore find no reason to vacate or modify the jury's award of
damages.
                             VI.
Grajales' Cross-Appeal: Attorney's Fees
 Plaintiff-cross appellant Grajales claims that under
Puerto Rico law, Fernndez v. San Juan Cement Inc., 118 D.P.R. 713,  
18 P.R. Offic. Trans. 823, 830 (1987), a party engages in obstinacy
when it merely answers a complaint and denies responsibility for a
plaintiff's damages, even if it accepts that responsibility later.  
Puerto Rico's Rules of Civil Procedure 44.1(d) and 44.3(b) permit
respectively the award of attorney's fees and prejudgment interest
when a party has been, in the court's judgment, obstinate.  See 32
L.P.R.A. App. III, R. 44.1(d), 44.3(b).  When Puerto Rico law
supplies the basis for decision in a diversity case, federal courts
must apply Rule 44.1(d), Quiones Pacheco v. American Airlines,
Inc., 979 F.2d 1, 7 n.8 (1st Cir. 1992), and application of Rule
44.3(b) would seem to follow. However, as Grajales concedes, a
previous panel of this court, in Mejias Quiros v. Maxxam Property
Corp., 108 F.3d 425, 429 (1st Cir. 1997), rejected (years after the
Fernndez decision) the very same claim of obstinacy that Grajales
raises here.  We agree with the Mejias panel that this argument
"cannot [be] seriously intended." Id.  
 Affirmed.

</body>

</html>