**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

RONALD C. MANDRGOC,
Plaintiff-Appellant,

v.

No. 95-3123

PATAPSCO & BACK RIVERS RAILROAD
COMPANY,
Defendant-Appellee.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Andre M. Davis, District Judge.
(CA-94-3287-AMD)

Argued: July 9, 1996

Decided: August 23, 1996

Before WILKINS, HAMILTON, and WILLIAMS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Allan B. Rabineau, RABINEAU & PEREGOFF, Balti-
more, Maryland, for Appellant. Robert T. Franklin, SEMMES,
BOWEN & SEMMES, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

WILLIAMS, Circuit Judge:

Ronald C. Mandrgoc appeals from the district court's entry of judgment as a matter of law, see Federal Rules of Civil Procedure 50(a), in favor of Patapsco & Back Rivers Railroad Co. (the Railroad) on his negligence claim under the Federal Employers' Liability Act (FELA), 45 U.S.C.A. §§ 51-60 (West 1986). A seventeen-year employee of the Railroad, Mandrgoc sued to recover damages for a foot injury he sustained when he leapt from the platform of a slow-moving railroad car moments before it inexplicably derailed. The district court granted the Railroad's motion in limine to exclude evidence of four prior unexplained derailments. Finding that Mandrgoc proffered no other evidence of negligence and rejecting his request to proceed under the doctrine of res ipsa loquitur, the district court then granted judgment as a matter of law for the Railroad. Mandrgoc appeals the district court's evidentiary ruling and its refusal to submit the case to the jury. Finding no error, we affirm.

I.

The following facts are not in dispute.**1** As a brakeman (also known as a groundman), Mandrgoc signalled an engineer to move the train through a thrown switch, thereby permitting the train to change tracks. On the night he was injured, Mandrgoc was a member of a three-man crew that was moving railroad cars into and out of the mills of a steel plant in Sparrows Point, Maryland. The crew successfully had moved cars through three switches on track 229 several times during their shift. Immediately before the partial derailment occurred, Mandrgoc threw the "229 switch," latched it, and inspected the switch, track, terrain, and the three cars to be moved through the switch. He then boarded a platform on the lead car and signalled the engineer to move the locomotive, slug,**2** and cars, which were loaded

_____

**1** During the pretrial hearing which concluded with the district court's entry of judgment as a matter of law for the Railroad under Fed. R. Civ. P. 50(a), the parties either stipulated to the facts or forecast the presentation of uncontroverted evidence in support of these facts.

**2** A slug "is like a locomotive with the cab sheared off. It's to give additional traction because the cars are so heavy." (J.A. at 53.)

2

with hundreds of thousands of pounds of liquid steel, through the switch. As the engineer moved the cars very slowly through the switch, Mandrgoc sensed a problem with the lead car and jumped to the ground, injuring himself.**3** Without any apparent cause, the lead car then partially derailed. A subsequent inspection of the derailed car revealed no defects, and the cause of the derailment remains unknown.

The Railroad had experienced four prior unexplained derailments on the same stretch of track, the last of which had occurred nine days before the instant derailment. Although they did not record the exact location of the prior derailments, the Railroad's repair records indicated that at least two of them did not involve any of the switches on track 229. During the nine-day period between the fourth derailment and the derailment here, the Railroad estimated that more than 2,000 cars had passed through the 229 switch without incident.

Asserting that the Railroad's negligence caused his injuries, Mandrgoc filed this FELA action in the United States District Court for the District of Maryland. Shortly before a jury was to be impanelled, the district court granted both the Railroad's motion in limine to exclude the evidence concerning the prior derailments, and, upon the parties' stipulation of the evidence to be presented at trial, its motion for judgment as a matter of law under Rule 50(a) of the Federal Rules of Civil Procedure. Mandrgoc appeals both the evidentiary ruling and the entry of judgment as a matter of law for the Railroad.

II.

Lacking direct evidence of negligence, Mandrgoc first asserts that a rational jury could infer that the Railroad was negligent from evidence that four prior derailments occurred within 300 feet of the partial derailment that allegedly caused his injuries. He claims that the evidence was admissible under the Federal Rules of Evidence to show

_____

**3** Although Mandrgoc's leap from the car, rather than the partial derailment, was the immediate cause of his injury, we shall assume for purposes of this appeal that Mandrgoc nevertheless would be able to prove the causation element of his negligence claim at trial.

3

a habit of negligence, a breach of the standard of care, or the absence of contributory negligence.

The district court, however, found that an inference of negligence on the basis of prior derailments would be impermissible because there was no evidence that they occurred at the 229 switch or that they resulted from the Railroad's negligence. The court therefore excluded the evidence, concluding that the dangers of unfair prejudice, confusion, and delay substantially outweighed its probative value under Rule 403 of the Federal Rules of Evidence.

Reviewing the district court's evidentiary ruling for an abuse of discretion, see Stillman v. Norfolk & Western Ry., 811 F.2d 834, 838 (4th Cir. 1987), we affirm. The prior derailments are irrelevant to Mandrgoc's case because their occurrence does not tend to make the Railroad's negligence in connection with the instant derailment any more or less probable. See Fed. R. Evid. 401. While a prior derailment could be probative of the Railroad's negligence if it occurred "under substantially the same conditions, at substantially the same place" and "at a time not too remote therefrom," see Sears, Roebuck & Co. v. Copeland, 110 F.2d 947, 948-49 (4th Cir. 1940), Mandrgoc cannot make such a connection here. He cannot show, for example, that any prior derailment occurred at the 229 switch or under similar circumstances. Additionally, Mandrgoc agreed that the prior derailments took place without any apparent negligence on the Railroad's part. Moreover, he acknowledges that thousands of railroad cars passed through the 229 switch uneventfully in the nine days prior to the partial derailment at issue here and that sometimes, in railroading, a derailment simply cannot be explained. The prior derailments thus shed no light on the question of whether the Railroad failed in its duty to maintain a safe workplace for Mandrgoc and therefore are irrelevant.

In addition, to conclude that the Railroad was negligent on the basis of this evidence a jury first would have to determine that the first four derailments resulted from the Railroad's negligence, a diversion from the merits of the case that the district court properly sought to avert under Rule 403. We therefore affirm the exclusion of this evidence.

4

III.

Alternatively, Mandrgoc proposes to advance his claim under the doctrine of res ipsa loquitur. Under this doctrine, he contends, a jury could infer from the occurrence of the partial derailment itself that the Railroad was negligent. In Mandrgoc's view, the Railroad exercised exclusive control over the switch, track, terrain, and cars, and it possessed superior knowledge regarding the operation, repair, and maintenance of these instrumentalities. Given this exclusive control, he argues the Railroad is presumptively liable and bears the burden of producing an explanation for the derailment. The Railroad, on the other hand, contends that the doctrine of res ipsa loquitur does not apply in this case because derailments can occur in the absence of negligence, Mandrgoc exercised a substantial degree of control over the instrumentalities that caused his injury, and he may have been negligent in performing his duties or in leaping from the car.

The district court held that the circumstances surrounding the partial derailment did not warrant a jury instruction on the doctrine of res ipsa loquitur. Rejecting Mandrgoc's suggestion, the district court refused to apply a blanket rule that the res ipsa loquitur doctrine governs all derailment cases. Concluding that the unexplained derailment standing alone is an insufficient basis under the FELA for a jury verdict in Mandrgoc's favor, the district court entered judgment for the Railroad.[4]

We review de novo a district court's denial or grant of judgment as a matter of law, see Trandes Corp. v. Guy Atkinson Co., 996 F.2d 655, 661 (4th Cir.), cert. denied, 114 S. Ct. 443 (1993), and we likewise conduct a plenary examination of a res ipsa loquitur ruling, see Stillman, 811 F.2d at 836. In so doing, we must view the evidence in a light most favorable to Mandrgoc and draw all reasonable inferences in his favor. See Tools USA & Equip. Co. v. Champ Frame Straightening Equip., Inc., ___ F.3d #6D 6D6D#, 1996 WL 364747, at *1 (4th

_____

[4] The district court's pre-trial res ipsa loquitur ruling was dispositive of the case because of the unexplained nature of the derailment. Mandrgoc acknowledged that he could present no other evidence of negligence. Without the benefit of an inference of negligence under the res ipsa loquitur doctrine, Mandrgoc had no case to present to the jury.

5

Cir. July 2, 1996). The question we must ask is whether "`the only conclusion a reasonable trier of fact could draw from the evidence is in favor'" of the Railroad. Id. (quoting Winant v. Bostic, 5 F.3d 767, 774 (4th Cir. 1993)). We answer that question affirmatively. Because a derailment can occur in the absence of negligence, and a party other than the Railroad -- Mandrgoc himself -- was substantially in control of the instrumentalities that played a role in the injury, we affirm the district court's decisions not to apply res ipsa loquitur in this case and to enter judgment for the Railroad.

Under the FELA, a railroad owes a duty to maintain a reasonably safe workplace for its employees. See Peyton v. St. Louis Southwestern Ry. Co., 962 F.2d 832, 833 (8th Cir. 1992). A breach of that duty results in liability for damages "for such injury or death resulting in whole or in part from the [railroad's] negligence." 45 U.S.C.A. § 51 (West 1986). A remedial statute, the FELA creates a"light burden of proof on negligence and causation," Estate of Larkins v. Farrell Lines, Inc., 806 F.2d 510, 512 (4th Cir. 1986), cert. denied, 481 U.S. 1037 (1987), which an employee can meet if "employer negligence played any part, even the slightest, in producing the injury," Rogers v. Missouri Pac. R.R., 352 U.S. 500, 506 (1957). The FELA, however, is not a workers' compensation scheme under which an employee may recover for injuries regardless of fault. See Consolidated Rail Corp. v. Gottshall, 114 S. Ct. 2396, 2404 (1994). Although liberally construed, the FELA imposes on an employee seeking damages "the burden of proving some act of negligence by the railroad." Hurley v. Patapsco & Back Rivers R.R., 888 F.2d 327, 329 (4th Cir. 1989) (per curiam).

In an appropriate FELA case, an employee may rely on the doctrine of res ipsa loquitur to meet this light burden of proof. See Stillman, 811 F.2d at 836. To obtain the benefit of an inference of negligence under the doctrine, the employee must satisfy three elements:

> (1) the injury for which the [employee] seeks recovery must be of a kind that ordinarily does not occur in the absence of negligence; (2) the injury must have been caused by some agency or instrumentality within the exclusive control of the [Railroad]; and (3) the injury must not have been due to any

6

> contribution or voluntary activity on the part of the
> [employee].

Id. at 836-37. Thus, although the "mere happening of an accident" will not warrant a res ipsa loquitur instruction, see Estate of Larkins, 806 F.2d at 512, the doctrine is appropriate if the circumstances surrounding an unexplained accident would permit a reasonable jury to infer that the Railroad was negligent, see Jesionowski v. Boston & M.R.R., 329 U.S. 452, 457-58 (1947).

In Jesionowski, for example, the administratrix of a railroad employee's estate was entitled to a res ipsa instruction because she adduced evidence that a train derailment would not have occurred in the absence of negligence on the Railroad's part. Id. at 458. Jesionowski's estate elicited testimony that a "frog operated with a spring mechanism," which was located about seventy-five feet from the switch, may have caused the derailment. Id. at 455. Once the jury found that the deceased employee's throwing of the switch and signalling to the engineer did not contribute to the derailment that killed him, the jury was free to infer from the circumstances surrounding the derailment that the Railroad was negligent. Id. at 458. Because these facts warranted the res ipsa loquitur instruction that the trial court delivered in Jesionowski, the Supreme Court reinstated a jury verdict for Jesionowski. Id.

In contrast, Mandrgoc cannot point to "facts of the occurrence [that] warrant the inference of negligence" on the Railroad's part. Id. at 457 (quoting Sweeney v. Erving, 228 U.S. 233, 240 (1913)). First, he failed to show this derailment ordinarily would not have occurred in the absence of negligence. While the derailment in Jesionowski may have been of an "extraordinary" sort, there is no evidence in the record from which we can draw that conclusion here. Moreover, Mandrgoc proffered no expert witnesses regarding any inadequacy in the Railroad's operation, repair, or maintenance of the 229 switch. See Hurley, 888 F.2d at 329 (noting that railroad employee failed to produce expert testimony or other evidence to support his claim that the railroad maintained inadequate lighting for the safe operation of a lathe). He also failed to show how the Railroad could have foreseen or prevented the accident. See Peyton, 962 F.2d at 834 (finding that railroad employee could not prove that railroad"could have discov-

7

ered the defect in the crow's foot," a tool that "fractured unexpectedly" and injured the employee). Indeed, thousands of cars safely had passed through the 229 switch in the weeks before the partial derailment that allegedly injured Mandrgoc, including at least two trains immediately before. While an employee is not required to show affirmative proof of negligence to invoke the res ipsa loquitur doctrine, at a minimum he must show that the specific circumstances surrounding the unexplained accident show that it was likely the result of negligence. See Jesionowski, 329 U.S. at 457. Here, however, the record contains no hint of negligence comparable to the evidence of a defective frog and spring in Jesionowski.

Second, Mandrgoc has not demonstrated that the Railroad alone controlled the switch and cars involved in the incident. As the brakeman on the crew, Mandrgoc was responsible for throwing the switch, verifying that it was latched properly, and signalling the engineer to proceed. Before the district court, the parties stipulated that Mandrgoc would testify that the switch looked safe to him when he gave the signal. Moreover, Mandrgoc elected to jump from the car in anticipation of the derailment. Thus, Mandrgoc personally exerted partial control over the instrumentalities that caused his injury. See Santa Maria v. Metro-North Commuter R.R., 81 F.3d 265, 272 (2d Cir. 1996) (holding res ipsa loquitur instruction was inappropriate because employee had partial control over a cot, supplied by the Railroad, which collapsed while employee was sleeping on it); Stillman, 811 F.2d at 837 (holding the railroad did not have exclusive control over the forklift whose blades fell onto the employee because the employee had placed himself under the blades). Although an employee's participation in the accident that caused his injuries does not per se bar the application of res ipsa loquitur, see Jesionowski, 329 U.S. at 457, Mandrgoc's significant role in the events leading to his injury demonstrates that the Railroad did not exclusively control the instrumentalities.

Thus, Mandrgoc is unable to fulfill two elements for submitting his case to a jury under the doctrine of res ipsa loquitur. Because he could present no other evidence of negligence, a jury "could have reached a verdict in [Mandrgoc's] favor only by speculating" as to the cause of this accident. Hurley, 888 F.2d at 329. Even in view of his light burden of showing that the Railroad's negligence played a slight part

8

in his injury, we agree with the district court that Mandrgoc's case is insufficient as a matter of law.

IV.

Because Mandrgoc could not show a sufficient similarity between the four prior derailments and the one that allegedly caused his injuries, the district court did not abuse its discretion in excluding the evidence of prior accidents. Moreover, the district court correctly entered judgment as a matter of law for the railroad because Mandrgoc failed either to satisfy the prerequisites of a res ipsa loquitur instruction or to forecast other evidence of negligence. Accordingly, we affirm.

AFFIRMED

9