In the

# United States Court of Appeals
## For the Seventh Circuit

No. 17-2429

DANNY R. RUARK,

*Plaintiff-Appellant,*

*v.*

UNION PACIFIC RAILROAD COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:14-cv-00329-DRH-RJD — **David R. Herndon**, *Judge.*

ARGUED DECEMBER 5, 2018 — DECIDED FEBRUARY 20, 2019

Before FLAUM, ROVNER, and SCUDDER, *Circuit Judges.*

ROVNER, *Circuit Judge.* The Federal Employers Liability
Act (FELA), 45 U.S.C. §§ 51-60, was enacted more than a hun-
dred years ago to compensate railroad employees for injuries
they receive on the job. Ruark was an employee of the Union
Pacific Railroad when a hydraulic rail drill malfunctioned and
sprayed him with hot oil. He sought relief under FELA using
the legal doctrine of "res ipsa loquitur," a doctrine that asks a
finder of fact to infer liability when (as the Latin is often

translated) "the thing speaks for itself." Because of the burden-shifting nature of the doctrine, it requires some baseline conditions—namely that the defendant was in control of the instrumentality that caused the injury and that the plaintiff was not also negligent. The district court found that these conditions were not met and thus the jury should not be instructed that they could assume that "the matter spoke for itself" under the doctrine. We agree and find that the district court did not abuse its discretion by refusing to grant Ruark a continuance before trial. We affirm on both points.

## I.

On September 22, 2013, Ruark was working as a machine operator on rail maintenance on the Union Pacific Railroad using a hydraulic rail drill to drill holes into the rails. To use the drill, the operator clamps it in place on the rail and then uses a lever to start the drill. When the drill is finished, the operator pushes the lever back to stop the drill and retract the bit, and then unclamps it from the rail. The drill is powered by hydraulics which requires that it connect to machinery by hoses carrying fluid. Ruark began working at six o'clock in the morning and was involved in hooking the drill up to the hydraulic lines before the work began. He used the drill throughout the day, attaching it to the rail, pushing the lever to start the drilling, pushing the lever to stop the drill and retract it, and then detaching it from the rail. Ruark used the machine to drill five or six holes that day, including the last one, and had not noticed any leaking hydraulic fluid or other malfunction. As he drilled the last hole, Ruark reached down to retract the drill bit out of the hole and turn the drill off when

he heard a "boom." [1] Hot fluid sprayed over him, including in his eyes. Ruark jerked upward, twisted, and stumbled backward. After Ruark informed his supervisor that the drill had exploded, the supervisor gave him napkins to wipe off the oil and Ruark declined further medical attention. The supervisor sent him home to clean up and told him to return to work the next day and report how he was feeling. Ruark returned to work the following day, but did not participate in much of the work, because, as he stated at his deposition, "it hurt too bad." Ruark's Short App. at 88. Ruark went home that evening and made an appointment to see his regular nurse practitioner the next day. The form he completed at her office stated that he was experiencing "sinus and stomach problems." Ruark's Short App. at 125. Ruark did not return to work after September 23 and was pulled out of service a few days later because he had been convicted of a felony unrelated to the workplace accident. On October 2, Ruark completed an accident report form based on the September 22 incident. On March 13, 2014, Ruark filed suit under FELA claiming injuries from the incident with the rail drill.

Ruark began a prison sentence a short while later (on June 28, 2016), a fact we note because it interrupted Ruark's representation and trial preparation. Two months into Ruark's incarceration (the end of August, 2016), his first set of lawyers moved to withdraw, asserting that it was impossible to

---

[1] Because this is an appeal from a grant of judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a)(1), we note the facts in the light most favorable to the party against whom judgment has been entered—in this case, Ruark. *Equal Employment Opportunity Comm'n v. Costco Wholesale Corp.*, 903 F.3d 618, 621 (7th Cir. 2018).

represent him in this tort matter while he was incarcerated. His new counsel took over a few months later (early December, 2016) and the district court scheduled a pretrial conference for the end of February. At that conference, the judge denied a pending motion for a continuance, reasoning that the case had been pending for almost three years, Ruark had been well represented by his initial counsel, he had been given a normal scheduling order, and the fact of his incarceration was not cause to reopen exhausted deadlines and allow Ruark to begin the discovery process anew. Despite the denial, the district court judge did permit some planned discovery to continue. He allowed Ruark's counsel to take his client's trial testimony by video deposition and to depose Ruark's treating physician. He also stated that he would consider a new motion to reopen discovery once a trial date was set and the new counsel became more familiar with the case. Ruark's lawyer, however, did not pursue that option. The trial began on June 13, 2017. Ruark proceeded on a theory of negligence based on res ipsa loquitur. Once the district court determined that the plaintiff had not met the requirements for use of the doctrine, it granted Union Pacific's motion for judgment as a matter of law, on June 14, 2017, a ruling which we review de novo. *Martin v. Milwaukee Cty.*, 904 F.3d 544, 550 (7th Cir. 2018). Judgment as a matter of law is proper if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." *Id.* (quoting Fed. R. Civ. P. 50(a)(1)). We review the district court's decision to deny the motions for a continuance and to reopen discovery for an abuse of discretion.

## II.

### A. Judgment as a matter of law on the FELA claim.

This case involves an interplay between FELA and the doctrine of res ipsa loquitur. While FELA provides the cause of action under federal statute for injuries received while in the employ of the railroad, the plaintiff here, Ruark, went about hoping to prove that liability by using the doctrine of res ipsa loquitur. Res ipsa loquitur describes not a substantive claim, but a manner of proceeding on that claim. As we will describe in more detail below, it is "a shortcut to a negligence claim." *Blasius v. Angel Auto., Inc.*, 839 F.3d 639, 649 (7th Cir. 2016) (citing *Maroules v. Jumbo, Inc.*, 452 F.3d 639, 642 (7th Cir. 2006)). Thus whether Ruark could proceed below depended on whether he had met the prerequisites for a res ipsa claim. In short, FELA provides the substantive framework for Ruark's claim but the evidentiary theory under which he opted to proceed is that rail drills do not, in the ordinary course of events, spray oil on their users. As we will discuss, the cost of admission to this plaintiff-friendly, burden-shifting doctrine requires a plaintiff to make some significant preliminary showings.

As for FELA, it may be true, as Ruark argues, that FELA requires a lower threshold for submitting matters to the jury. FELA is a remedial statute, lowering the burden of proof so that an employee might meet it if "employer negligence played any part, even the slightest, in producing the injury." *Rogers v. Missouri Pac. R.R.*, 352 U.S. 500, 506 (1957); *Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 771 (7th Cir. 2014).

This lowered threshold, however, does not mean that an employer is responsible for any injury that occurs in the course of employment. As the Supreme Court explained:

> That FELA is to be liberally construed, however, does not mean that it is a workers' compensation statute. We have insisted that FELA does not make the employer the insurer of the safety of his employees while they are on duty. The basis of his liability is his negligence, not the fact that injuries occur.

*Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 543–44, 114 S. Ct. 2396, 2404 (1994) (internal citations omitted).

Ruark, therefore, is correct that a FELA case should go to a jury if even the slightest of facts support a finding of negligence. As the plaintiff has established in the multitude of FELA cases it has set forth in its brief (none of which, we note however, is a claim brought on the theory of res ipsa loquitur), the amount of evidence required to submit a FELA case to the jury is "scarcely more substantial than pigeon bone broth." Ruark Brief at 11 (citing *Green v. CSX Transp., Inc.*, 414 F.3d 758, 766 (7th Cir. 2005)). But, "[a]s light as this burden is, the plaintiff must still present some evidence of negligence … specifically, the plaintiff must offer evidence creating a genuine issue of fact on the common law elements of negligence, including duty, breach, foreseeability, and causation." *Green*, 414 F.3d at 766. See also *Tennant v. Peoria & P. U. Ry. Co.*, 321 U.S. 29, 32, 64 S. Ct. 409, 411 (1944) ("[p]etitioner [is] required to present probative facts from which the negligence and the causal relation could reasonably be inferred."). A FELA plaintiff "is not impervious to summary judgment. If the plaintiff presents no evidence whatsoever to support the inference of

negligence, the railroad's summary judgment motion is properly granted." *Lisek v. Norfolk & W. Ry. Co.*, 30 F.3d 823, 832 (7th Cir. 1994). And if the plaintiff opts to proceed on a doctrine that the injury speaks for itself, as opposed to some other theory of liability, he must meet the requirements to proceed on that theory, just as he would have been required to offer evidence creating a genuine issue of fact on duty, breach, foreseeability, and causation if Ruark's theory of the case had been an ordinary negligence claim. See *Green*, 414 F.3d at 766. In this case, Ruark's theory of the case is that Union Pacific's negligence should be inferred under the doctrine of res ipsa loquitur, and so we turn now to the requirements for the evidence he was required to offer to present his case to a jury.

Ordinarily negligence may not be inferred from the mere fact that an injury occurred, but the doctrine of res ipsa loquitur recognizes that "in some situations an occurrence is so unusual that, absent a reasonable justification, the person in control of the situation should be held responsible." *Maroules*, 452 F.3d at 642. The doctrine of res ipsa loquitur permits an inference of liability on the part of the defendant if the plaintiff can demonstrate that certain conditions existed making it likely that the defendant was responsible for the injury. The doctrine means "the matter speaks for itself" and thus, as the Supreme Court explained,

> When a thing which causes injury, without fault of the injured person, is shown to be under the exclusive control of the defendant, and the injury is such, as in the ordinary course of things, does not occur if the one having such control uses proper care, it affords reasonable evidence,

in the absence of an explanation, that the injury
arose from the defendant's want of care.

*Jesionowski v. Boston & M.R.R.*, 329 U.S. 452, 456, 67 S. Ct. 401, 403 (1947) (citing *San Juan Light & Transit Co. v. Requena*, 224 U.S. 89, 98–99, 32 S. Ct. 399, 401 (1912)). And because courts are fond of enumerated lists, we often state the prerequisites for a res ipsa claim as follows: (1) The injury must be one that does not ordinarily occur absent negligence; (2) the injury must have been caused by some agency or instrumentality in the exclusive control of the defendant; and (3) the injury must not have been due to any contribution or voluntary activity on the part of the plaintiff. *Robinson v. Burlington N. R.R. Co.*, 131 F.3d 648, 652 (7th Cir. 1997) (citing *Stillman v. Norfolk & W. Ry*, 811 F.2d 834, 836–37 (4th Cir. 1987)).

Once the plaintiff has met the prerequisites listed above, the reward is high. She is entitled to have the court instruct the jury that it may draw an inference of negligence. That is not to say that the jury would be compelled to find negligence—just that the facts of the occurrence warrant such an inference. *Jesionowski*, 329 U.S. at 457, 67 S. Ct. at 404 (citing *Sweeney v. Errving*, 228 U.S. 233, 240, 33 S. Ct. 416, 418 (1913)).

A plaintiff may use the doctrine of res ipsa loquitur in a FELA case. See *Robinson*, 131 F.3d at 652. And in this case, the last two factors in the list are the ones at play—that is whether the Railroad had exclusive control of the drill or not, and whether any of Ruark's injuries could be attributed to his own actions. And these factors are, of course, really two sides of the same coin. In order for a plaintiff to show that the defendant was responsible for the accident, he must preclude other possible causes of the injury—including his own contribution. See *Jesionowski*, 329 U.S. at 454, 67 S. Ct. at 402.

In this case, the key question, therefore, was whether Ruark's injury was caused by some agency or instrumentality in the exclusive control of the Railroad. The district court concluded that there was no question that the drill was not in the exclusive control of the Railroad, and we agree. As Ruark testified, he was touching and using the drill when the hydraulic fluid came squirting out. He was involved in hooking the rail drill to the hydraulic lines on the machine that day, and he used the rail drill to drill at least four or five holes. The drill was operating properly when he first began using it and worked without incident throughout the day up until the time of the accident. In fact, at the hearing on Union Pacific's motion for judgment as a matter of law, Ruark's counsel admitted that he had partial control over the drill.

> Court: We know that he—at least he was, in part, in control of this drill, correct?
>
> Ruark's counsel:      Correct.

As the district court concluded, "in light of the plaintiff's testimony about the control that he had in this case, hooking up the hoses, hooking up the hoses to the drill, hooking up the drill to the rail, pulling the lever in and out, turning the drill on and off, I find res ipsa loquitur does not apply." R. 110 at 28. We agree.

Ruark attempts to nudge the control factor in Ruark's favor in two ways. First, Ruark claims that the requirement of "exclusive control" is not as exclusive as the phrase might suggest. Second, he argues that Union Pacific had a "non-delegable duty to maintain its equipment in safe working order and to provide Ruark with a safe place in which to work and safe equipment." Ruark Brief at 21.

Turning to exclusive control first, Ruark argues that the doctrine is applicable even where there is some evidence that the "plaintiff's participation in the employer's activity might have produced the accident." Ruark Brief at 6. For this proposition, Ruark cites *Colmenares Vivas v. Sun Alliance. Ins. Co.*, 807 F.2d 1102 (1st Cir. 1986). In *Colmenares Vivas*, the plaintiffs were injured when an airport escalator handrail malfunctioned causing them to tumble down the stairs. The court had to decide whether the doctrine of res ipsa loquitur could be applied where the Ports Authority of Puerto Rico owned and maintained the airport but contracted with Westinghouse to maintain the escalator. *Id.* at 1105-06. In deciding that res ipsa loquitur could be applied in the case against the airport authority, the court used the following language, on which Ruark relies:

> Thus, res ipsa loquitur applies even if the defendant shares responsibility with another, or if the defendant is responsible for the instrumentality even though someone else had physical control over it. … It follows that a defendant charged with a nondelegable duty of care to maintain an instrumentality in a safe condition effectively has exclusive control over it for the purposes of applying res ipsa loquitur.

*Colmenares Vivas*, 807 F.2d at 1106 (internal citations omitted). But in *Colmenares Vivas*, the court was deciding which of two potential tort feasors (in a non-FELA case) effectively had control over the escalator. There was no question that the injured parties themselves had no control over the escalator. *Id.* at 1107. In this case, in contrast, the question is whether the plaintiff may have contributed to the accident, and the

Supreme Court and this court have been clear that one cannot employ the doctrine of res ipsa loquitur where there is a possibility of negligence on the part of the injured plaintiff. *Robinson*, 131 F.3d at 653–54. The injury must have occurred "without fault of the injured person." *Jesionowski*, 329 U.S. at 456–57, 67 S. Ct. at 403-04 (1947).

Ruark is correct that a court can still give an instruction on res ipsa loquitur when the plaintiff's allegedly negligent acts are "part of the employer's general activity." *Robinson*, 131 F.3d at 655, n. 6. But this is only true if a jury can first eliminate the possibility that the plaintiff's activity contributed to the injury. *Jesionowski*, 329 U.S. at 456–57, 67 S. Ct. at 403–04; *Robinson*, 131 F.3d at 653–54. What matters is whether the injured person participated in the operations in a manner that contributed to the accident—not merely whether he participated in the operations of the injuring instrumentality. *Jesionowski*, 329 U.S. at 457, 67 S. Ct. at 404. *Robinson*, 131 F.3d at 655 & n.6. See also *Potthast v. Metro-N. R.R. Co.*, 400 F.3d 143, 151 (2d Cir. 2005) ("It is this consideration of *inappropriate* interaction, rather than whether there ever was or was not *any* interaction involving the plaintiff and the instrumentality of the injury, that constitutes the salient criterion.") (emphasis in original).

And so, for example, if a jury concludes that an injured brakeman's activities—throwing a switch and giving a signal—did not contribute to the accident where he was thrown from a rail car and killed, the defendant railroad qualifies as the exclusive controller of the factors which caused the injury. *Jesionowski*, 329 U.S. at 458, 67 S. Ct. at 404. The jury may then proceed on a res ipsa loquitur instruction, inferring negligence on the part of the railroad. *Id.* In contrast, a railroad employee who is not riding in the proper position while

switching railcars may have contributed to her own injuries and thus is not entitled to a res ipsa instruction. See *Robinson*, 131 F. 3d at 655. Nor is a railroad worker plaintiff entitled to such an instruction if he made the decision to attempt to free a jammed forklift load by pulling on it while standing beneath it. *Stillman*, 811 F.2d at 837. *See also McGinnis v. Consolidated Rail Corp.*, Nos. 96-2571, 97–1009, 1997 WL 457530, at *3 (4th Cir. Aug. 12, 1997) (railroad worker who lost his balance and grabbed a coupler which then crushed his hand could not recover on a res ipsa loquitur theory because of his contribution to or voluntary activity in the accident); *Mandrgoc v. Patapsco & Back Rivers R.R. Co.*, No. 95-3123, 1996 WL 477253, at *5 (4th Cir. Aug. 23, 1996) (an employee had partial control of the instrumentality of injury because he operated the switch and elected to jump from the car in anticipation of the derailment); *Santa Maria v. Metro-North Commuter R.R.*, 81 F.3d 265, 272 (2d Cir. 1996) (holding res ipsa loquitur instruction was inappropriate because employee had partial control over a cot, supplied by the Railroad, which collapsed while the employee was sleeping on it).

Ruark argues that there was "no evidence that Plaintiff operated the drill in any negligent manner." Ruark Reply Brief at 3. This is, of course, correct, but it misunderstands the relationship between the second and third requirements of a res ipsa loquitur claim and the plaintiff's burden. Recall that the doctrine of res ipsa loquitur shifts the burden to the defendant and allows a jury to infer negligence. This is not the usual way our legal system proceeds and places a heavy thumb on the plaintiff's side of the scale. Before that thumb can be placed, the doctrine requires that a plaintiff make a significant showing that he can eliminate other possible explanations for the injury—aside from the employer's negligence. The

prerequisites, therefore, are "rigidly defined." *Jesionowski*, 329 U.S. at 456, 67 S. Ct. at 403. One of those prerequisites is that "the defendant must have exclusive control of all the things used in an operation which might probably have caused injury." *Jesionowski*, 329 U.S. at 456, 67 S. Ct. at 403. If the employer is not in control of the instrumentality of the injury then there is a greater chance that the person or thing that is, in fact, in control of that instrumentality caused the injury. Because Ruark controlled the drill and its set up, his actions could have been the cause of his injury. That is not to say that they were. Ruark is correct that there is no evidence that he operated the drill negligently. There need not be. But without a demonstration that Union Pacific had control of the instrumentality of the injury, we cannot employ a doctrine that assumes Union Pacific's negligence by mere fact of the accident itself. As the Supreme Court put it:

> there can be no application of the doctrine of res ipsa loquitur if other causes than the negligence of the defendant, its agents or servants, might have produced the accident[.] [T]he plaintiff … has the burden to exclude the operation of such causes by a fair preponderance of the evidence before the rule can be applied. This is so because if there are other causes than the negligence of the defendant that might have caused the accident, the defendant cannot be said to be in exclusive control—one of the prerequisites to the application of the rule here invoked.

*Jesionowski*, 329 U.S. at 454, 67 S. Ct. at 402 (1947).

Here the district court concluded that "it isn't just that the plaintiff had some role, but that he was in control of this tool,

this instrumentality, and … more so than the railroad." R. 110 at 29. And thus the court concluded that Ruark had not presented sufficient evidence that the Railroad controlled the drill in order to meet the prerequisites for a res ipsa loquitur instruction. R. 110 at 24. We agree.

Ruark's brief also states, without argument, that "Union Pacific has a non-delegable duty to maintain its equipment in safe working order and to provide Ruark with a safe place in which to work and safe equipment." Ruark Brief at 21. This seems to be just another way of saying that a jury can infer negligence by an employer any time an accident occurs. If this position were true, then in every FELA case, the railroad would be assumed to have complete control over everything in the workplace regardless of the plaintiff's contributory negligence, and every FELA case would warrant a res ipsa loquitur instruction. We know, however, that is not so. See, e.g., *Robinson*, 131 F. 3d at 654; *Stillman*, 811 F.2d at 837; *Santa Maria*, 81 F.3d at 272; *McGinnis*, 1997 WL 457530, at *3; *Mandrgoc*, 1996 WL 477253, at *5.

Ruark failed to meet the prerequisites for a res ipsa loquitur instruction, and because this was his sole theory of the case, the district court correctly granted Union Pacific's motion for judgment as a matter of law.

## B.  The denial of a request for a continuance.

As Ruark's FELA case ambled along, so too did the criminal claims against him in his unrelated criminal case. After he was incarcerated in that matter, his lawyers moved to withdraw, claiming it was impossible to represent him under the

circumstances. (R. 41, R. 43, R. 39 at ¶ 7, R. 42 at ¶ 6).[2] Once Ruark's new counsel first appeared in the case, the judge set a pretrial conference for two months later. Sixteen days before that conference, Ruark's counsel first requested to continue the conference and trial. He did not expressly request that the court reopen discovery, but he noted that he wanted to take statements or depositions of multiple individuals and wished to hire an economist. The Railroad argued that all of those individuals had been disclosed and were known to the plaintiff since 2014 and could have been deposed in a timely manner. The district court denied the motion.

Ruark argues that the district court abused its discretion by denying the motion to continue. A district court, however, must have a wide berth to manage caseloads and dockets and therefore "[a] district court's exercise of its discretion in scheduling trials and granting or denying continuances is 'almost standardless.'"*United States v. Egwaoje*, 335 F.3d 579, 587–88 (7th Cir. 2003) (citing *United States v. Moya-Gomez*, 860 F.2d 706, 742 (7th Cir. 1988)). See also, *Flint v. City of Belvidere*, 791 F.3d 764, 768 (7th Cir. 2015). And in this case, the district court judge managed his discretion reasonably. As explanation for denying the motion for the continuance at the February 6 pretrial conference, the judge noted that Ruark had a normal scheduling order, competent former counsel, and that the trial had already been continued two or three times

---

[2] Ruark's brief states that, "[t]he district judge seemed to begrudge that Ruark was serving a sentence on an unrelated issue … ." Ruark Brief at 24. It is worth noting that the district court did not seem particularly concerned about the logistical problems of deposing Ruark in prison, noting that the judge had been involved in a similar case where a plaintiff who was in prison needed to be deposed. R. 109 at 12.

previously. Moreover, he did not deny definitively Ruark's motion for a continuance, but rather he denied it for the time being, encouraging Ruark's counsel to file such a motion if it became necessary later in the proceedings:

> … as you get more familiar with your case, I am open to you filing a motion to—[a] formal motion to continue that trial date, setting out the kind of things you talked about, which defendant can respond to, and I'll rule on that motion, you know, and see if you come up with anything that might convince me.

R. 109 at 15-16. Additionally, on February 22, 2017, the district court entered a formal written order that stated "[u]pon a trial date being set, Plaintiff is granted leave to file a formal motion to continue, if appropriate." R. 58.

Loss of counsel is not a per se reason that a district court might reopen discovery. Like other factors it is one of many that a court might consider in exercising its broad discretion to grant or deny a continuance. See, e.g., *Egwaoje*, 335 F.3d at 588 (considering plaintiff's knowledge of the trial schedule, his repeated requests for a speedy trial, multiple rescheduling after the plaintiff fired counsel, likelihood of prejudice, complexity of case, diligent use of trial preparation time, and inconvenience and burden to the court and parties); *Washington v. Sherwin Real Estate, Inc.,* 694 F.2d 1081, 1085–86, 1088–89 (7th Cir. 1982) (affirming the denial of continuance where the plaintiffs' lawyer withdrew on the day of trial, the case had been pending for three years, and the district court permissibly concluded that "no further delay could be tolerated."). In this case, however, the judge recognized that the change of counsel might be a hindrance to preparation and advised

Ruark's counsel that he would keep an open mind in considering a new motion to continue.

Plaintiff's counsel, however, never filed a motion to continue the June trial date or to reopen discovery, and instead proceeded to trial. Even if the judge had erred (and for the reasons asserted above, we find that he was well within his discretion), Ruark cannot show any prejudice from the district court's ruling. He knew the identities of the individuals he wanted to interview, but he appears to have abandoned any attempt to interview them or reopen discovery.

## III.

In short, we conclude that the district court correctly entered judgment as a matter of law for the Railroad as Ruark failed to satisfy the prerequisites for the theory of negligence under which he pursued the case—res ipsa loquitur. The district court did not abuse its discretion in refusing to grant a motion for a continuance. We therefore AFFIRM the judgment in all respects.