[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 18-14897
Non-Argument Calendar

————————————————

D.C. Docket No. 1:15-cr-00028-TWT-LTW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JASON PHILPOT,

Defendant-Appellant.

————————————————

Appeals from the United States District Court
for the Northern District of Georgia

————————————————

(July 12, 2019)

Before MARCUS, ROSENBAUM and HULL, Circuit Judges.

PER CURIAM:

Jason Philpot appeals his convictions for Hobbs Act Robbery, in violation of

18 U.S.C. §§ 1951(a) and 2 ("Count One"), discharging a firearm during and in

relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(i)(a)(iii) ("Count

Two"), and possession of a firearm by a convicted felon, in violation of 18 U.S.C.

§§ 922(g)(1) and 924(e)(1) ("Count Four").  Philpot pled guilty to Count One.

Thereafter, a jury convicted Philpot of Counts Two and Four.  A (now-retired)

district court judge initially granted Philpot's motions to withdraw his guilty plea

as to Count One and for new trial on all three counts.  The government filed a

motion for reconsideration.  The successor judge assigned to the case granted the

government's motion for reconsideration and denied Philpot's motions to withdraw

his guilty plea and for a new trial on all counts.  Philpot appeals the successor

judge's order.  After review, we affirm.

## I.  BACKGROUND

### A.    Indictment

On September 30, 2014, defendant Philpot and his codefendant, Patrick

Reese, were apprehended after fleeing the scene of an armed robbery of a Waffle

House restaurant in Tucker, Georgia.  A federal grand jury charged defendant

Philpot and codefendant Reese with Hobbs Act robbery, in violation of 18 U.S.C.

§§ 1951(a) and 2, in Count One of the indictment.  As to Count One, the

indictment alleged that defendant Philpot and codefendant Reese "aided and

abetted by each other, did knowingly obstruct, delay, and affect commerce and the

movement of articles and commodities in such commerce by robbery."  The

2

indictment further alleged that the defendants unlawfully took and obtained U.S. currency belonging to Waffle House "from the presence of an employee of the business, by means of actual and threatened force, violence, and fear of injury" to the employee.

The indictment also separately charged Philpot in Count Two with discharging a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii), and in Count Four with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). In separate counts, the indictment charged codefendant Reese with discharging a firearm during a crime of violence (Count Three) and with possession of a firearm by a convicted felon (Count Five).

## B.    Guilty Plea to Count One

Both defendants initially entered pleas of not guilty. On the first day of trial, however, defendant Philpot entered into a non-negotiated guilty plea to Count One, the Hobbs Act robbery charge. Philpot admitted he participated in the armed robbery but stated he did not have a firearm himself, so he went to trial on the firearm charges in Counts Two and Four. Codefendant Reese went to trial on all three counts.

Specifically, at Philpot's plea hearing, the government stated that, to establish Hobbs Act robbery, it would have had to prove beyond a reasonable doubt that: (1) defendant Philpot knowingly acquired someone else's personal

3

property, or aided and abetted codefendant Reese in doing so; (2) defendant Philpot took the property, or aided and abetted codefendant Reese in doing so, against the victim's will by using actual or threatened force or violence or caused a victim to fear harm either immediately or in the future; and (3) defendant Philpot's actions, or the actions that he aided and abetted, obstructed, delayed, or affected interstate commerce. Defendant Philpot, who was under oath, agreed that, if he went to trial, the government would have to prove those three elements beyond a reasonable doubt. Philpot also agreed that it was his intent to plead guilty to Count One that had those elements.

To establish the factual basis for defendant Philpot's plea to Count One, the government stated that it was prepared to prove that, on the day of the robbery, defendant Philpot and codefendant Reese, both of whom were armed, entered a Waffle House, threatened and brandished their firearms at the Waffle House employees, and stole money belonging to the employees and to Waffle House. After Philpot and Reese left the Waffle House, there was a short police chase until the defendants wrecked their car, exited the vehicle, and each fired his firearm at the police. Defendant Philpot fled on foot but was apprehended at a nearby hotel. The police recovered a black mask from the vehicle with defendant Philpot's DNA on it and found a black hat just outside the vehicle that the police believe Philpot

4

wore during the robbery.  The vehicle was registered to a woman whose daughter was dating defendant Philpot, and Philpot had permission to use the car that day.

When the district court asked defendant Philpot if he agreed with the conduct described in the government's proffer, Philpot stated that he did not. Defendant Philpot stated that he had not entered the Waffle House and had not fired a weapon at police officers.  Importantly, however, defendant Philpot confirmed that he knew that the Waffle House "was going to be robbed with the use of a weapon by [his] co-defendant, Mr. Reese."  Defendant Philpot thus admitted robbing the Waffle House with his codefendant Reese.

Upon further questioning by the district court, defendant Philpot admitted that he was the "get-away car driver," and drove Reese and two other individuals named "Darrius" and "Bear" to the Waffle House knowing that "somebody" was going to go inside and rob the restaurant.  According to defendant Philpot, however, he and codefendant Reese remained in the car, and Darrius and Bear entered the Waffle House to rob it.  Defendant Philpot admitted that he knew Darrius and Bear "were taking weapons into the Waffle House" to scare the people inside into giving them money.  When Darrius and Bear returned to the car three minutes later, they had the guns in their hands, and defendant Philpot drove them away.  A police officer pursued their car, and defendant Philpot crashed the car into a tree.  Defendant Philpot said that as he ran from the car, he heard gun shots,

and that he was apprehended at a nearby hotel.  Defendant Philpot denied wearing the mask recovered at the scene and said he had touched the mask before, which might explain why his DNA was found on it.  Defendant Philpot agreed that he aided and abetted the robbery by driving everyone from the scene and that codefendant Reese participated in the robbery as well "to the extent that he was with [Philpot] and part of the gang that was going to rob the Waffle House."

At the end of the questioning, the district court stated, and the government agreed, that what defendant Philpot had admitted to was "a sufficient factual predicate for the Hobbs Act robbery count."  The district court pointed out that the facts Philpot admitted to were "different than what the government has alleged" in its proffer.  The district court asked defense counsel if she agreed that Philpot had admitted "to having aided and abetted others in the Hobbs Act robbery of the Waffle House."  Defense counsel for Philpot stated that she did.

After admitting guilt as to Count One, defendant Philpot clarified that he was not admitting to his using a weapon during the robbery, he was merely admitting to aiding and abetting the armed robbery.  Philpot stated, "I know that weapons were used, I am not admitting to having used weapons.  I understand how federal laws can be kind of tricky and confusing at times."  The district court explained that from the facts Philpot had admitted, it could make a legal determination that there was a sufficient factual predicate to find him guilty of

6

Count One.  The district court accepted Philpot's guilty plea to Count One after finding that Philpot fully understood the charge against him and the consequences of pleading guilty and that the plea was freely, voluntarily and competently made. The district court then adjudicated him guilty of Count One.

## C.    Post-Trial Motions to Withdraw Guilty Plea to Count One and for New Trial

The same day, the jury trial began on the remaining firearm counts against defendant Philpot and all three counts against codefendant Reese.  During the trial, the government presented evidence that Philpot did go into the Waffle House with a gun and did shoot at the police as he fled on foot.  The jury found defendant Philpot guilty of using or carrying, and also specifically of brandishing and discharging, a firearm during the robbery, Count Two, and of possessing the firearm as a convicted felon, Count Four.  The jury acquitted codefendant Reese as to Counts One, Three, and Five.

After the district court granted defendant Philpot's motion to appoint new counsel, defendant Philpot filed a counseled motion to withdraw his guilty plea as to Count One.  Philpot argued that his guilty plea to aiding and abetting the Hobbs Act robbery in Count One—and more specifically to being present and knowing that the robbers were going to commit a robbery and were armed—was not knowingly entered because it "defeated any plausible defense to" the firearm offenses in Counts Two and Four and "served no strategic purpose."

7

Philpot also filed a counseled motion for a new trial on all three Counts. Philpot pointed out that Count One charged him with aiding and abetting codefendant Reese and no other participants and alleged that he entered the Waffle House to commit the robbery, facts he did not admit during his plea colloquy. Philpot argued, inter alia, that a new trial was warranted because the withdrawal of his guilty plea would leave open for a jury determination the essential elements of whether he was present and participated in the robbery. The government opposed Philpot's motions, arguing, inter alia, that Philpot's guilty plea to Count One was made knowingly and was supported by a sufficient factual basis. That factual basis included Philpot's admission that he participated in the armed robbery, although he claimed his role was limited to driving the getaway car.

On April 18, 2018, the district court granted Philpot's motions. The district court noted that Count One alleged that Philpot and codefendant Reese aided and abetted each other and did not allege, specifically or generally, that anyone else was involved in the Hobbs Act robbery. The district court concluded that it had impermissibly amended Count One of the indictment when it accepted Philpot's guilty plea to aiding and abetting someone other than codefendant Reese, as follows:

> In accepting Philpot's plea to Count One the morning of trial, the Court accepted that Philpot aided and abetted Bear and Darrius who forced employees in the restaurant to turn over restaurant monies. In doing so, the Court acknowledged that it amended the indictment to

8

find Philpot aided and abetted persons other than Reese.  The amendment impermissibly changed the charge on which Philpot was found guilty and the Court grants Philpot's motion to withdraw his plea to Count One.

The district court also determined that the withdrawal of Philpot's guilty plea to Count One required a new trial on Counts Two and Four because of the substantial and unfair risk that the jury had relied on the plea in considering the remaining counts.

## D.    Government's Motion for Reconsideration

On May 30, 2018, the government filed a motion for reconsideration of the district court's April 18, 2018 order.  The government argued that the district court had not impermissibly amended the indictment because Count One charged Philpot with aiding and abetting codefendant Reese and Philpot had admitted during his plea hearing that codefendant Reese was present with Philpot and that Reese had participated in the Waffle House robbery.  The indictment had charged that Philpot aided and abetted Reese and thus there was no constructive amendment event if Darrius and Bear were also involved.

Shortly after the government filed its motion for reconsideration, the district judge assigned to Philpot's case, Judge William S. Duffey, Jr., retired on July 1, 2018, and the case was thereafter reassigned to Chief Judge Thomas W. Thrash, Jr.  The district court, with Chief Judge Thrash now presiding, granted the government's motion for reconsideration.  At the outset, the district court pointed

9

to the statement in the prior order that the court had "acknowledged that it amended the indictment to find Philpot aided and abetted persons other than Reese" and concluded that this statement "as to what happened at the plea hearing is clear error authorizing consideration of the Government's Motion for Reconsideration."  The district court reviewed relevant portions of the plea colloquy and found that there were no discussions in the plea colloquy about amending the indictment, which charged Philpot had aided and abetted Reese.

The district court emphasized that, as to the robbery in Count One, Philpot never denied that codefendant Reese was involved in the robbery.  The district court explained that "[t]he fact that the Defendant stated that two others were also involved does not mean that the Court amended the indictment when it accepted the plea of guilty."

Prior to sentencing, Philpot filed a motion for reconsideration, arguing that the successor judge was required to honor the district court's prior order granting Philpot's motions.  At sentencing, Philpot reiterated his argument.

The district court denied Philpot's motion for reconsideration.  The district court acknowledged that, under ordinary circumstances, when a judge takes over a case from another judge, the successor judge ought to respect the orders and judgments of the prior judge.  The district court concluded, however, that a successor judge has the same authority as the prior judge to reconsider an order

10

and that it had concluded, based on a review of the transcript of the plea hearing, that the district court judge in the prior order had committed clear error in granting Philpot's motions to withdraw his guilty plea and for a new trial.

The district court then sentenced Philpot to 188 months' imprisonment as to Counts One and Four, to run concurrently, and to 120 months' imprisonment as to Count Two, to run consecutively.

## II.  DISCUSSION

Philpot's appeal raises two interrelated issues: (1) whether the successor judge abused his discretion in granting the government's motion to reconsider the prior order granting Philpot's motions to withdraw his guilty plea and for a new trial; and (2) whether that prior order had erred in concluding that the acceptance of Philpot's guilty plea constructively amended Count One of the indictment.[1]

## A.    Successor Judge's Reconsideration of Prior Judge's Order

As an initial matter, the successor district court judge had discretion to reconsider the prior order granting Philpot's motions to withdraw his guilty plea and for a new trial.  Under the Federal Rules of Criminal Procedure, "[a]fter a

---

[1]We review for abuse of discretion the district court's ruling on a motion for reconsideration.  United States. v. Watkins, 760 F.3d 1271, 1284 (11th Cir. 2014).  A district court "abuses its discretion when it makes an error of law."  United States v. Gari, 572 F.3d 1352, 1361 (11th Cir. 2009) (quotation marks omitted); cf. Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007) (providing, in the civil context, that the grounds for granting a motion for reconsideration are newly discovered evidence or manifest errors of law or fact).

verdict or finding of guilty, any judge regularly sitting in or assigned to a court may complete the court's duties if the judge who presided at trial cannot perform those duties." Fed. R. Crim. P. 25(b)(1). As a general rule, when a case is transferred from one judge to another, the successor judge "should respect and not overrule" a decision and order of the former judge. See Stevenson v. Four Winds Travel, Inc., 462 F.2d 899, 904-05 (5th Cir. 1972).[2] This general rule, however, "is by no means absolute," because "[c]arried to its extreme, this rule could dictate absurd results: it could, for example, preclude a district court from reaching a just and correct result merely because a case had been transferred to it from the docket of a different district judge, whose earlier rulings may be clearly wrong." Gallimore v. Missouri Pac. R. Co., 635 F.2d 1165, 1171-72 (5th Cir. Unit A 1981) (providing that a court has plenary power over an order granting a new trial and may reconsider its ruling granting it even if a different district court judge made the earlier ruling). Accordingly, this Court has held that a successor judge may reconsider a first judge's rulings when the final judgment has not yet been entered. Tech. Res. Servs., Inc. v. Dornier Med. Sys., Inc., 134 F.3d 1458, 1465 n.9 (11th Cir. 1998); see Gallimore, 635 F.2d at 1171.

---

[2]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent decisions of the Fifth Circuit handed down before October 1, 1981.

Here, as no final judgment had been entered against Philpot, the successor judge had plenary power to reconsider the prior ruling granting Philpot's motions. Philpot contends there was there was "no legal reason" to overturn the prior order and that the government did not present any new evidence to the successor judge. This ignores that the successor judge granted the government's motion for reconsideration based on a perceived error of law, namely whether accepting Philpot's guilty plea to Count One impermissibly amended the indictment. That legal error, if it occurred, is a proper basis for reconsideration of a prior order. We now turn to that issue.

## B.    Constructive Amendment Claim

A defendant seeking to withdraw a guilty plea after its acceptance but prior to sentencing must show that there is a "fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B); United States v. Brehm, 442 F.3d 1291, 1298 (11th Cir. 2006). The district court may consider the totality of the circumstances surrounding the plea in order to determine whether the defendant has met his burden to show a "fair and just reason." Brehm, 442 F.3d at 1298. Similarly, on the defendant's motion for a new trial, the district court may vacate a judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim P. 33(a). Here, defendant Philpot sought to withdraw his guilty plea to Count One

13

and for a new trial on all three counts based, in part, on his claim that the district court in accepting his guilty plea had constructively amended his indictment.

Under the Fifth Amendment, a defendant can be convicted of only the crime charged in the indictment, and a district court may not constructively amend the indictment. Stirone v. United States, 361 U.S. 212, 215-17, 80 S. Ct. 270, 272-73 (1960). A constructive amendment "occurs when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment." United States v. Behety, 32 F.3d 503, 508 (11th Cir. 1994) (quotation marks omitted); see also United States v. Madden, 733 F.3d 1314, 1322 (11th Cir. 2013) ("[A] court errs when it allows for an alternative method of conviction that is not included in the indictment."). Although a constructive amendment typically occurs in the context of a jury trial, either by the government's presentation of evidence or argument or by the district court's jury instructions, courts have "also recognized the challenge in the context of a guilty plea, that, by its terms, amends the charges brought by the indictment." United States v. Bastian, 770 F.3d 212, 220 (2d Cir. 2014) (collecting cases); see also United States v. Tello, 687 F.3d 785, 794-97 (7th Cir. 2012).[3]

---

[3] "A constructive amendment, when established, is reversible error if the claim has been preserved." United States v. Leon, 841 F.3d 1187, 1192 (11th Cir. 2016). If, however, the defendant does not raise the issue of constructive amendment in the district court, our review is for plain error. Madden, 733 F.3d at 1322. Here, Philpot did not raise the constructive amendment claim at the time of his plea colloquy; rather, he raised it only after the trial and the jury verdict on Counts Two and Four. Rather than resolve whether the claim is preserved, we

14

Here, Count One charged that Philpot and codefendant Reese "aided and abetted by each other" committed the Hobbs Act robbery of the Waffle House, in violation of 18 U.S.C. §§ 1951(a) and 2.  To convict a defendant of Hobbs Act robbery, the government must prove a robbery and an effect on interstate commerce.  18 U.S.C. § 1951(a); United States v. Dean, 517 F.3d 1224, 1227-28 (11th Cir. 2008).  The Hobbs Act defines robbery as the "unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property."  18 U.S.C. § 1951(b)(1).

"To prevail under a theory of aiding and abetting, the government must prove: (1) the substantive offense was committed by someone; (2) the defendant committed an act which contributed to and furthered the offense; and (3) the defendant intended to aid in its commission."  United States v. Margarita Garcia, 906 F.3d 1255, 1280 (11th Cir. 2018), cert. denied, 2019 WL 1280784 (U.S. May 13, 2019).  "[A] defendant can only be liable on an aiding-and-abetting theory if the Government proves that the substantive offense, which the defendant allegedly

---

will assume arguendo that Philpot preserved the constructive amendment issue by raising it in his motions to withdraw his guilty plea and for a new trial.  See United States v. Moriarty, 429 F.3d 1012, 1018-19 & n.2 (11th Cir. 2005) (explaining that review is for plain error when a defendant fails to file a motion to withdraw his guilty plea in the district court that raises the alleged errors in the plea proceedings).

15

aided and abetted, was <u>actually committed</u> by someone else." <u>United States v. Hassoun</u>, 476 F.3d 1181, 1183 n.2 (11th Cir. 2007).

Importantly, under 18 U.S.C. § 2, "all participants in conduct violating a federal criminal statute are 'principals'" and can be convicted of aiding and abetting even if the named principal is acquitted. <u>Standefer v. United States</u>, 447 U.S. 10, 19-20, 100 S. Ct. 1999, 2005-06 (1980). Further, aiding and abetting is not a separate crime; rather, "[i]t allows a jury to find one guilty of an offense even though he did not commit all the acts constituting the elements of the substantive crime aided." <u>United States v. Martin</u>, 747 F.2d 1404, 1407 (11th Cir. 1984). As a result, there is no need to refer to aiding and abetting in the indictment because "[t]he aiding and abetting theory is not an essential element of the offense." <u>United States v. DePace</u>, 120 F.3d 233, 236 n.3 (11th Cir. 1997); <u>see also</u> <u>United States v. Broadwell</u>, 870 F.2d 594, 607 (11th Cir. 1989) (noting that a defendant "can be found guilty as an aider and abettor pursuant to 18 U.S.C. § 2 even though the indictment did not specifically charge him as an aider and abettor"). Instead, "it is merely a theory upon which criminal liability may be based," <u>United States v. Camacho</u>, 233 F.3d 1308, 1315 (11th Cir. 2000), and "an alternative charge in every count, whether explicit or implicit." <u>United States v. Walker</u>, 621 F.2d 163, 166 (5th Cir. 1980).

16

The factual basis for Philpot's guilty plea to Count One, as recited by Philpot and accepted by the district court at the plea hearing, was that: (1) Philpot and codefendant Reese, along with two other individuals, Bear and Darrius, were "part of the gang" that planned to rob the Waffle House; (2) Philpot, as the getaway driver, drove the other three men to the Waffle House; (3) Philpot knew that Bear and Darrius had guns that would be used during the robbery to scare people into giving them money; (4) while Philpot and codefendant Reese waited in the car, Bear and Darrius entered the Waffle House with masks and guns and robbed the restaurant; (5) after the robbery, Bear and Darrius returned to the car, and Philpot drove them and codefendant Reese away from the Waffle House; and (6) when police pursued them, he crashed the car and fled on foot.

The district court's acceptance of Philpot's guilty plea with this factual basis did not broaden the possible grounds for conviction beyond what was charged in Count One and thus did not constructively amend the indictment. Philpot pled guilty to aiding and abetting defendant Reese in the commission of a Hobbs Act robbery. Philpot never denied that defendant Reese was a participant in the robbery or claimed that he only aided and abetted Bear and Darrius. In fact, Philpot admitted that both he and codefendant Reese were part of the robbery gang and that he drove the gang, which included Reese, to and from the Waffle House where the robbery was committed. The fact that Philpot admitted to <u>also</u> aiding

17

and abetting Bear and Darrius, the other two members of the robbery gang who actually committed the Hobbs Act robbery, does not mean Philpot's factual basis constructively amended Count One.

Because Philpot admitted that both he and codefendant Reese participated in the Waffle House robbery, this is not a case in which a charged principal who was not involved in the offense was later substituted for an uncharged principal who was involved in the offense. Cf. United States v. Salinas, 654 F.2d 319, 323-25 (5th Cir. Unit A 1981) (finding a constructive amendment where the trial evidence showed that the defendant aided and abetted a different bank officer than the one charged and that the charged bank officer had no involvement in the offense), overruled on other grounds by United States v. Adamson, 700 F.2d 953, 965 n.18 (5th Cir. Unit B 1983) (en banc). Nor is this a case in which a charged principal was substituted for an unspecified principal. Cf. United States v. Keller, 916 F.3d 628, 634 (11th Cir. 1990) (concluding the district court's instruction constructively amended the indictment because it permitted the jury to convict the defendant if he conspired "with anyone" when the indictment specified a particular person). Simply put, the crime to which Philpot pled guilty—aiding and abetting codefendant Reese in the Hobbs Act robbery—is the same crime charged in Count One.

18

Although the facts to which Philpot admitted do not support that he and codefendant Reese committed the substantive robbery offense themselves, those facts do support that they both aided and abetted each other and also Bear and Darrius, who did commit the robbery. The fact that the indictment did not name Bear and Darrius specifically, or unknown others generally, does not establish that Philpot pled guilty to an offense other than the one charged. The indictment was not required to reference Bear and Darrius because aiding and abetting is implicit in every count and is not an element of the offense. See Martin, 747 F.2d at 1407; DePace, 120 F.3d at 236 n.3; Broadwell, 870 F.3d at 607; Walker, 621 F.2d at 166. Here, Philpot cannot show that an essential element of the offense was altered by his admissions that Bear and Darrius committed the Waffle House robbery because their participation went to the government's theory of liability rather than an element of the offense that was required to be charged in the indictment. See DePace, 120 F.3d at 236 n.3; Camacho, 233 F.3d at 1315; Behety, 32 F.3d at 508. Further, Philpot's admission that Bear and Darrius committed the robbery satisfied the government's burden that the robbery "was actually committed by someone else." See Hassoun, 476 F.3d at 1183 n.2.

Given that the district court correctly concluded that acceptance of Philpot's guilty plea to Count One did not constructively amend the indictment, the successor district court did not abuse its discretion when it granted the

19

government's motion for reconsideration of the prior order in the same case before sentencing.  Further, to the extent Philpot argues the successor district court abused its discretion by failing to explicitly address Philpot's motion for a new trial, no further explanation was required because the prior order's grant of Philpot's motion for a new trial on all three counts was premised on the erroneous grant of Philpot's motion to withdraw his plea to Count One.

**AFFIRMED.**